O
JS-6

# United States District Court
# Central District of California

IT'S MY SEAT, INC., et al.,

　　　　　　　Plaintiffs,

　　　v.

HARTFORD CAPITAL LLC, et al.,

　　　　　　　Defendants.

Case № 2:22-cv-02192-ODW (AFMx)

**ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS [18]; AND DENYING MOTION TO DISMISS [31]**

## I.　　INTRODUCTION

Plaintiffs It's My Seat, Inc. and Vahe Shahinian (together, "Plaintiffs") have twice initiated litigation in state court based on the same fraud and breach of contract allegations. The first case Plaintiffs filed was removed to this Court, *It's My Seat, Inc. v. Hartford Capital, LLC*, No. 2:20-cv-06378-ODW (AFMx) (C.D. Cal. filed July 17, 2020) (hereinafter, "*It's My Seat I*"), and the Court eventually dismissed all but one defendant due to Plaintiffs' failure to serve them. After the deadline to add parties expired in that case, Plaintiffs filed this second, nearly identical, action in state court and named most of the dismissed defendants. (*See* Notice of Removal ("NOR") Ex. 1 ("Compl.") ¶ 12, ECF No. 1.) Thereafter, this second action was also removed to this Court, *It's My Seat, Inc.  v. Hartford Capital, LLC*, No. 2:22-cv-2192-ODW (AFMx) ("*It's My Seat II*"). (*See* NOR.) Two motions to dismiss are now pending in this

action.  (Hartford Mot. Dismiss ("Hartford Mot."), ECF No. 18; EIN Mot. Dismiss ("EIN Mot."), ECF No. 31.)  For the reasons that follow, the Court **GRANTS IN PART** and **DENIES IN PART** Defendant Hartford Capital LLC's motion to dismiss, and **DENIES** the EIN Defendants'[1] motion to dismiss.[2]

## II.    BACKGROUND

Shahinian owns It's My Seat, Inc., a ticket sales agency that also produces and promotes events.  (Compl. ¶ 22.)  It's My Seat's business model requires the company to front the costs of services for these events.  (*Id.*)  Plaintiffs allege that, in January 2019, Defendant Brian Stein contacted It's My Seat in his role as "managing partner" of Defendant Hartford Capital and offered It's My Seat a $750,000 line of credit ("Term Loan") if It's My Seat also took a Merchant Cash Advance of $250,000 ("Bridge Loan"), to be funded by Defendant EIN.  (*Id.* ¶ 26.)  Plaintiffs allege that Stein offered the Bridge Loan at a high interest rate of 15%, but promised the Bridge Loan would transition to the Term Loan after thirty days, with a lower interest rate of 8.89%.  (*Id.*)  It's My Seat would have to make daily payments on the Bridge Loan and could not take loans from third parties.  (*Id.*)  It's My Seat accepted the loans.  (*Id.* ¶ 27.)  Plaintiffs allege that, on January 10, 2019, EIN funded the Bridge Loan, but then never transitioned the Bridge Loan into the Term Loan.  (*Id.* ¶¶ 30, 35–36.)  Plaintiffs assert that "Defendants," and Stein in particular, strung them along for more than two months with promises of funding the Term Loan, while extracting daily high-interest payments with no intention to deliver on the Term Loan.  (*Id.* ¶¶ 35–38.)

## A.    First Action: *It's My Seat I*

On October 28, 2019, Plaintiffs filed *It's My Seat I* in state court against Hartford Capital, Stein, Craig Walters, Kevin Woodley, EIN, Craig Leszczak,[3] Russell

---

[1] The "EIN Defendants" are EIN Cap, Inc., Kevin Woodley, Russell Naftali, and Gene Slavin.

[2] Having carefully considered the papers filed in connection with the Motions, the Court deemed the matters appropriate for decision without oral argument.  Fed. R. Civ. P. 78; C.D. Cal. L.R. 7-15.

[3] Filings in *It's My Seat I* indicate that Walters and Leszczak are the same individual.  *See* Min. Order 2, *It's My Seat I*, ECF No. 17.

Naftali, and Gene Slavin.   Compl. ¶¶ 3–10, *It's My Seat I*, ECF No. 1-1.   Plaintiffs asserted claims for (1) breach of contract, (2) breach of implied covenant of good faith and fair dealing, (3) promissory estoppel, (4) fraud, (5) intentional misrepresentation, (6) negligent misrepresentation, and (7) violation of the California Consumer Legal Remedies Act ("CLRA").   *Id.* ¶¶ 42–95.   Eight months later, in June 2020, Plaintiffs served Stein, who removed the action to federal court.   Notice of Removal ¶¶ 1–2, *It's My Seat I*, ECF No. 1.   On November 30, 2020, after Plaintiffs twice failed to adequately show cause for their failure to serve the defendants, the Court dismissed without prejudice all defendants except Stein.   Min. Order, *It's My Seat I*, ECF No. 23.

The Court set a case management schedule, including a November 15, 2021 deadline for hearing motions to add parties; a May 16, 2022 discovery cutoff; and an August 19, 2022 bench trial.   Scheduling & Case Management Order 21, *It's My Seat I*, ECF No. 32.   In February 2022, Plaintiffs retained new counsel who asked Stein for a continuance.   *See* Joint Stip. to Continue, *It's My Seat I*, ECF No. 45.   Stein agreed on the condition that any deadlines that had already lapsed—i.e., the deadline to amend or add parties—would *not* be continued, and that Plaintiffs would not seek to add the dismissed defendants back into the litigation.   *See id.* ¶ 23.   On March 15, 2022, Plaintiffs and Stein executed a stipulation expressly premised on these conditions and, on March 18, 2022, the Court granted the stipulated continuance, setting a new trial date for February 17, 2023.   Order Granting Stip., *It's My Seat I*, ECF No. 46.

**B.   This Action: *It's My Seat II***

Unbeknownst to Stein or Stein's counsel, two weeks before the parties stipulated to the continuance in *It's My Seat I*, on March 4, 2022, Plaintiffs filed this second action in state court and named most of the defendants dismissed in *It's My Seat I*.   (*See* Compl.)   In this second action, Plaintiffs again name as Defendants Hartford, Woodley, EIN, Naftali, and Slavin, but do not name Stein, Walters, or

Leszczak.   (*Id.*)   Plaintiffs assert the same claims for (3) promissory estoppel, (4) fraud, and (5) intentional and (6) negligent misrepresentation as those in *It's My Seat I*, but replace the breach of contract, breach of the implied covenant, and CLRA claims with claims for (1) violation of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), (2) RICO conspiracy, and (7) unfair competition.  (*See id.* ¶¶ 42–94.)   EIN removed the action and it was transferred to this Court as it is related to *It's My Seat I*.  (*See* NOR.)   Hartford and the EIN Defendants now separately move to dismiss Plaintiffs' claims.[4]  (*See* Hartford Mot.; EIN Mot.)

## III.   DISCUSSION

The Court finds that dismissal of this action, *It's My Seat II*, is warranted under Federal Rule of Civil Procedure ("Rule") 41(b), the Court's inherent authority, and due to Plaintiffs' improper attempt to split their claims.

### A.   Rule 41(b)

"The Court has the inherent power to achieve the orderly and expeditious disposition of cases by dismissing actions pursuant to [Rule] 41(b) for failure . . . to comply with court orders."   *Rollins v. Superior Ct.*, 706 F. Supp. 2d 1008, 1013 (C.D. Cal. 2010) (first citing *Link v. Wabash R.R. Co.*, 370 U.S. 626, 629–30 (1962); and then citing *Pagtalunan v. Galaza*, 291 F.3d 639, 640 (9th Cir. 2002)); *see also Chambers v. NASCO, Inc.*, 501 U.S. 32, 47 (1991) (discussing that courts possess inherent authority to manage their own proceedings and control the conduct of those appearing before them).   In determining whether to dismiss a claim for failure to

---

[4] Hartford and Plaintiffs request and oppose judicial notice in connection with Hartford's Motion. (*See* Hartford Req. Judicial Notice ("RJN"), ECF No. 19; Pls. RJN, ECF No. 29-1; Pls. Obj. Hartford RJN, ECF No. 29-2; Hartford Suppl. RJN, ECF No. 41; Hartford Opp'n Pls. RJN, ECF No. 42.)   The Court takes judicial notice of undisputed adjudicative facts in court filings in *It's My Seat I*.   *See U.S. ex rel Robinson Rancheria Citizens Council v. Borneo, Inc.*, 971 F.2d 244, 248 (9th Cir. 1992) (stating that the court "may take notice of proceedings [and related filings], both within and without the federal judicial system, if those proceedings have a direct relation to matters at issue").   However, the Court does not judicially notice disputed facts contained therein, *Lee v. City of Los Angeles* 250 F.3d 668, 689 (9th Cir. 2001), or Plaintiffs' proffered SEC Complaint filed in Illinois, which is immaterial to this disposition.

comply with a court order, the Court must weigh several factors: "(1) the public's interest in expeditious resolution of litigation; (2) the court's need to manage its docket; (3) the risk of prejudice to defendants/respondents; (4) the availability of less drastic alternatives; and (5) the public policy favoring disposition of cases on their merits." *Pagtalunan*, 291 F.3d at 642.   A court is not required to consider these factors explicitly, *see Henderson v. Duncan*, 779 F.2d 1421, 1424 (9th Cir. 1986), and they are "not a series of conditions precedent before the judge can do anything, but a way for a district judge to think about what to do," *In re Phenylpropanolamine (PPA) Prods. Liab. Litig.*, 460 F.3d 1217, 1226 (9th Cir. 2006) (internal quotation marks omitted).

Hartford argues that Plaintiffs' "misconduct" and "sharp," "sleazy tactics" warrant dismissal under Rule 41(b) and the Court's inherent authority.   (Hartford Mot. 32.)   Hartford contends Plaintiffs' conduct is "tantamount to violation of a court order," (*id.* at 34), because Plaintiffs commenced *It's My Seat II* in state court "without seeking leave of this Court," and then "bamboozled Stein's counsel (and this Court) into an order for trial continuance, based on [P]laintiffs' promise not to attempt to amend the complaint or name additional defendants," (*id.* at 32).   Plaintiffs respond that they "have not violated any court order."   (Opp'n Hartford Mot. 24, ECF No. 29.) They argue that, in *It's My Seat I*, the Court dismissed unserved defendants without prejudice, so Plaintiffs were not barred from refiling the same claims against those defendants.   (*Id.*)   Plaintiffs also assert they have not violated the stipulation to continue in *It's My Seat I*, as they only agreed they would not amend the pleadings or add new parties *in that case*, which they have not done.   (*Id.*)

Plaintiffs' protestations aside, they misled Defendant Stein's counsel, Mr. Goldberg, and this Court, when they obtained the stipulation and continuance in *It's My Seat I* under false pretenses.   Plaintiffs' counsel had already filed *It's My Seat II* against the dismissed defendants in state court when they represented to Mr. Goldberg that they would not seek to add the dismissed defendants back into the litigation.

Although, technically, Plaintiffs did not affirmatively violate an obligation in the stipulation, Plaintiffs' counsel omitted from the negotiation and stipulation the material fact that they had already filed the second action. That material omission misled Mr. Goldberg—and the Court—regarding the intended nature of *It's My Seat I* by implying that Plaintiffs planned to pursue their claims against only Stein. This was untrue. Plaintiffs' argument that they cannot be held responsible for Mr. Goldberg's misunderstanding of Plaintiffs' promise is simply duplicitous.

Furthermore, Plaintiffs' material omissions when obtaining the continuance, and their strategic circumvention of Court orders concerning the timely addition of proper parties, demonstrate bad faith. A court may infer bad faith based on an attorney's experience. *Huettig & Schromm, Inc. v. Landscape Contractors Council of N. Cal.*, 790 F.2d 1421, 1427 (9th Cir. 1986). Plaintiffs' three attorneys collectively have decades of experience practicing law. Attorney Kassabian has been in practice for fourteen years, nine of which he spent at a large internationally renowned law firm before opening his own practice. Decl. Raffi Kassabian ¶¶ 2–4, *It's My Seat I*, ECF No. 52-1. California State Bar records establish that Attorneys Demirjian and Bezdikian have been practicing for thirteen years and nineteen years, respectively. *See* Decl. Kris Demirjian ¶ 1, *It's My Seat I*, ECF No. 52-2 (SBN 252767); Decl. Sareen Bezdikian ¶ 1, *It's My Seat I*, ECF No. 52-3 (SBN 229165). Given this level of experience, "a strong inference arises that" they intentionally concealed their filing of *It's My Seat II* and offered misleading promises to obtain an otherwise unlikely continuance in *It's My Seat I*. *See Huettig*, 790 F.2d at 1427. The Court finds it "beyond belief that counsel could have believed in good faith" that filing a nearly identical second case against defendants this Court had dismissed in Plaintiffs' first case, in a different court and after the time had expired to add parties in the first case here, somehow did not circumvent this Court's orders and the administration of justice. *See id.* Plaintiffs intentionally evaded this Court's orders and authority; this conduct supports dismissal under Rule 41.

Further, dismissing this action and requiring Plaintiffs to proceed in *It's My Seat I* will also serve the Rule 41(b) factors by consolidating the claims, evidence, and parties at issue in a single legal action. *See Pagtalunan*, 291 F.3d at 642. Requiring Plaintiffs to proceed in a single litigation will expedite a unified resolution of the intertwined legal issues, streamline the Court's management of its docket, and eliminate the risk to defendants of potentially inconsistent judgments. And as dismissal is without prejudice, it is less drastic than dismissal with prejudice.

The Court finds it difficult to believe that attorneys of Plaintiffs' counsel's collective experience could somehow be ignorant of their abuse of the Federal Rules, their circumvention of this Court's orders, and their material omissions. Accordingly, pursuant to Rule 41(b) and the Court's inherent authority, the Court dismisses this action without prejudice.

## B.   Claim-Splitting

Alternatively, the Court dismisses this action because Plaintiffs have improperly split their claims by filing a second, duplicative action. A "district court may exercise its discretion to dismiss a duplicative later-filed action." *Adams v. Cal. Dep't of Health Servs.*, 487 F.3d 684, 688 (9th Cir. 2007), *overruled on other grounds by Taylor v. Sturgell*, 553 U.S. 880 (2008). In *Adams*, the Ninth Circuit explained that "[p]laintiffs generally have 'no right to maintain two separate actions involving the same subject matter at the same time in the same court and against the same defendant.'" *Id.* (quoting *Walton v. Eaton Corp*, 563 F.2d 66, 70 (3d Cir. 1977)). "Dismissal of the duplicative lawsuit, more so than the issuance of a stay or the enjoinment of proceedings, promotes judicial economy and the comprehensive disposition of litigation." *Id.* at 692 (internal quotation marks omitted).

Borrowing from the test for claim preclusion, the Ninth Circuit assesses "whether the second action is duplicative of the first" by "examin[ing] whether the causes of action and relief sought, as well as the parties or privies to the action, are the same." *Id.* at 688–89. In determining whether the causes of action are the same, the

most significant consideration is whether the "two suits arise out of the same transaction nucleus of facts." *See id.* (quoting *Costantini v. Trans World Airlines*, 681 F.2d 1199, 1202 (9th Cir. 1982)).

Plaintiffs assert weakly that *It's My Seat II* is not *exactly* duplicative of *It's My Seat I* because they do not name *all* the dismissed defendants again and have asserted a RICO claim instead of a claim for breach of contract.  (Opp'n Hartford Mot. 23 (incorporating by reference the arguments made in opposing Defendant Stein's motion for sanctions in *It's My Seat I*)); Opp'n Stein Mot. Sanctions 9, *It's My Seat I*, ECF No. 52.  But Plaintiffs cannot deny that the two actions arise out of the exact same transactional nucleus of facts and will require presentation of substantially the same evidence.  The rights and interests at issue in *It's My Seat I* are the same as those in *It's My Seat II*, as they stem from the same alleged misrepresentations and relationships among the parties.  Accordingly, the Court finds it appropriate to dismiss *It's My Seat II* without prejudice and require Plaintiffs to proceed only in *It's My Seat I*.  *See Adams*, 487 F.3d at 692 (finding that where claim splitting exists, district courts have discretion to dismiss the "later-filed complaint [with or] without prejudice").

The Local and Federal Rules provide procedures to obtain the relief Plaintiffs sought here: the late addition of claims or parties to a litigation.  These procedures include moving to modify the scheduling order to permit a belated motion to amend pleadings.  *See* Fed. R. Civ. P. 15, 16.  Although the Court makes no assessment concerning Plaintiffs' likelihood of success on such a motion, it notes that the Local and Federal Rules are designed to impose the appropriate burdens and legal standards on the parties according to the relief they seek.  Had Plaintiffs complied with these rules instead of circumventing the Court's orders and filing an improper duplicative action, Plaintiffs may have avoided creating the present procedural quagmire.

///

///

## IV.   CONCLUSION

For the reasons discussed above, the Court **GRANTS IN PART and DENIES IN PART** Hartford's Motion to Dismiss.   (ECF No. 18.)   Specifically, the Court **DISMISSES** Plaintiffs' Complaint pursuant to Rule 41(b), the Court's inherent authority, and for improper claim splitting, and **DENIES AS MOOT** Hartford's remaining arguments for dismissal.   The Court **DENIES AS MOOT** the EIN Defendants' Motion to Dismiss.   (ECF No. 31.)   All dates and deadlines are **VACATED**.   The Clerk of the Court shall close this case.

**IT IS SO ORDERED.**

August 17, 2022

_____

**OTIS D. WRIGHT, II**
**UNITED STATES DISTRICT JUDGE**