O

# United States District Court
# Central District of California

| | |
|---|---|
| IT'S MY SEAT, INC. et al., <br><br>  Plaintiffs, <br><br> v. <br><br> EIN CAP, INC. et al., <br><br>  Defendants. | Case № 2:22-cv-02192-ODW (AFMx) <br><br> **ORDER DENYING DEFENDANTS' MOTION TO TRANSFER [69]** |

## I.  INTRODUCTION

Plaintiffs It's My Seat, Inc. and Vahe Shahinian (collectively "Plaintiffs") initiated this action against Defendants EIN CAP, Inc., Kevin Woodley, Gene Slavin, and Russell Naftali (collectively "Defendants"), for the alleged fraudulent inducement of a merchant cash advance agreement.[1]  (Notice Removal ("NOR") Ex. A ("Compl."), ECF No. 1.)  Defendants now move to transfer the action to the United States District Court for the Southern District of New York pursuant to a forum selection clause in the cash advance agreement.  (Mot. Dismiss or Transfer ("Motion" or "Mot."), ECF No. 69.)  For the following reasons, the Court **DENIES** Defendants' Motion.[2]

---

[1] The Court dismissed Defendant Hartford Capital LLC from the action pursuant to the parties' Joint Stipulation to Dismiss, entered on September 30, 2022.  (Order Grant. Joint Stip., ECF No. 61.)

[2] Having carefully considered the papers filed in connection with the Motion, the Court deemed the matter appropriate for decision without oral argument.  Fed. R. Civ. P. 78; C.D. Cal. L.R. 7-15.

## II. BACKGROUND

The following facts are taken from Plaintiffs' Complaint. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (holding that well-pleaded factual allegations are accepted as true for purposes of a motion to dismiss).

### A. The Parties

It's My Seat, Inc. ("IMS") is a concert promoter and ticket vending agency incorporated in California with its principal place of business in Los Angeles County. (Compl. ¶¶ 1–2.) Vahe Shahinian ("Shahinian") is the owner and president of IMS and resides in Los Angeles County. (*Id.*)

Hartford Capital LCC ("Hartford") is a business loan provider organized as a New York limited liability company. (NOR ¶ 5; *see* Compl. ¶¶ 3, 16, 25–26.) Boris Stein ("Stein") is a managing partner at Hartford and resides in New York. (NOR ¶ 5; Compl. ¶ 26.) EIN CAP, Inc. ("EIN") is a merchant cash advance lender incorporated in New York. (NOR ¶ 5; Compl. ¶ 26.) Kevin Woodley, Gene Slavin, and Russell Naftali are employed by or manage EIN and reside in New York. (Compl. ¶¶ 16–21, 39.) Although Hartford is a separate entity from EIN, Plaintiffs allege that Hartford has its money invested in EIN. (Compl. ¶ 26.)

### B. The Dispute

On January 8, 2019, Stein reached out to Shahinian with a loan opportunity for IMS. (*Id.* ¶ 26.) Stein offered a $750,000 line of credit (the "Term Loan") that carried an annual interest rate of 8.89%. (*Id.*) However, to qualify for the Term Loan, IMS would first need to take out a $250,000 bridge loan (the "Bridge Loan") from EIN, to demonstrate IMS's credit worthiness. (*Id.*) The Bridge Loan would take the form of a "Merchant Cash Advance," and carry a monthly interest rate of 15% "with a daily payment of $3,600.00." (*Id.*) IMS would need to make daily payments on the high-interest Bridge Loan for thirty days before the remainder of the loan transitioned to the lower-interest Term Loan with the higher line of credit. (*Id.*) Additionally, Plaintiffs would be prohibited from taking out any other third-party loans during the

thirty day repayment period on the Bridge Loan. (*Id.*) Based on Stein's promises, IMS—through Shahinian—entered into the Bridge Loan with EIN. (*Id.* ¶ 27.) The Bridge Loan Agreement includes only the terms pertaining to the Bridge Loan, and does not mention the Term Loan. (*See* Decl. Russell Naftali ISO Mot. ("Naftali Decl.") Ex. 1 ("Bridge Loan Agreement"), ECF No. 69-1.)

On January 10, 2019, Plaintiffs received the Bridge Loan funds and began to make timely payments. (Compl. ¶¶ 30–32.) However, Plaintiffs did not hear from Defendants after the initial thirty days. (*Id.* ¶ 35.) When Plaintiffs inquired about the status of the Term Loan on February 12, 2019, Stein responded that the Term Loan "was being worked on." (*Id.*) Over the following weeks, "Defendants gave Plaintiffs string-along statements to reassure [them] that the Term Loan would come through." (*Id.*) Meanwhile, IMS continued making the daily required high-interest payments on the Bridge Loan for more than a month beyond the date the Term Loan should have taken effect. (*Id.* ¶ 36.)

Seventy days passed and Stein did not transition the Bridge Loan into the Term Loan. (*Id.*) In need of capital to fund its operations, IMS took out additional third-party loans. (*Id.* ¶ 38.) When Defendants learned of IMS's third-party loans, Defendants accused IMS of violating the Bridge Loan Agreement and refused on that basis to provide the Term Loan. (*Id.*)

Plaintiffs contend that Stein and EIN "were acting in cahoots" and "purposely delayed . . . the line of credit until Plaintiffs were in a financial corner and were forced to seek third-party funding." (*Id.*) Defendants then used Plaintiff's third-party funding "as an excuse to not transition the Bridge Loan to a Term Loan." (*Id.*)

**C.    The Litigation**

On March 4, 2022, Plaintiffs initiated this action in Los Angeles County Superior Court. (*See* Compl.) Defendants subsequently removed the action to the United States District Court for the Central District of California. (*See* NOR.) Based on the allegations above, Plaintiffs assert causes of action for: (1) violation of the civil

Racketeer Influenced and Corrupt Organizations ("RICO") Act; (2) conspiracy to commit RICO; (3) promissory estoppel; (4) fraud; (5) intentional misrepresentation; (6) negligent misrepresentation; and (7) unfair competition in violation of California Business and Professions Code section 17200. (Compl. ¶¶ 42–92.) Defendants seek to transfer the action to the United States District Court for the Southern District of New York pursuant to a forum selection clause in the Bridge Loan Agreement.[3] (*See* Mot.; Joinder Mot., ECF No. 70.) Plaintiffs oppose transfer, arguing that the forum selection clause does not apply to this action. (*See* Opp'n Mot. ("Opp'n"), ECF No. 78.)

### III. LEGAL STANDARD

A district court has discretion to transfer an action to another district court "where it might have been brought," if "the convenience of parties and witnesses" and the interest of justice favor transfer. *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988) (quoting 28 U.S.C. § 1404(a)). When considering a motion to transfer under § 1404(a), "[s]ubstantial weight is accorded to the plaintiff's choice of forum, and a court should not order a transfer unless the 'convenience' and 'justice' factors . . . weigh heavily in favor of venue elsewhere." *Catch Curve, Inc. v. Venali, Inc.*, No. 2:05-cv-04820-DDP (AJWx), 2006 WL 4568799, at *1 (C.D. Cal. Feb. 27, 2006) (citing *Sec. Inv. Prot. Corp. v. Vigman*, 764 F.2d 1309, 1317 (9th Cir. 1985)). Thus, "[t]he party seeking the transfer bears the burden of persuasion." *Id.*

However, when a valid forum selection clause is present, the district court must "adjust their usual § 1404(a) analysis." *Atl. Marine Const. Co. v. U.S. Dist. Ct. for W. Dist. Texas*, 571 U.S. 49, 51 (2013). The adjusted analysis gives no weight to "the plaintiff's choice of forum," and courts "should not consider arguments about the parties' private interests" since they waived their right to "challenge the preselected forum as inconvenient" by consenting to the forum selection clause. *Id.* at 63–64.

---

[3] Defendants initially also moved to dismiss on forum non conveniens grounds, but have since withdrawn the request to dismiss. (Reply 2, ECF No. 79.)

Therefore, when a forum selection clause applies, the district court should consider only the public interest factors. *Id.* at 64.

## IV. DISCUSSION

Defendants request a transfer based on the forum selection clause, arguing that Plaintiffs explicitly consented to the jurisdiction of New York courts in any action arising under the Bridge Loan Agreement and, therefore, Plaintiffs are barred from bringing this action outside of New York State. (Mot. 3–4.) Conversely, Plaintiffs argue the Court should refuse the transfer because the forum selection clause does not apply, as their causes of action are outside its scope. (Opp'n 3–6.) After evaluating the language of the forum selection clause, the Court finds that Plaintiffs' causes of action fall outside the scope of the clause, and therefore, the forum selection clause does not apply. Absent the forum selection clause, the § 1404(a) factors favor keeping the action in this Court.

### A. Applicability of the Forum Selection Clause

Plaintiffs argue that the forum selection clause does not encompass their causes of action because Plaintiffs bring tort claims for fraud, not breach of contract, and because they do not dispute the validity of the Bridge Loan Agreement containing the clause. (Opp'n 4–5.)

When federal courts determine whether a forum selection clause applies, they do so under federal law, even in the context of diversity actions, like this one. *Yei A. Sun v. Advanced China Healthcare, Inc.*, 901 F.3d 1081, 1086 (9th Cir. 2018). In the Ninth Circuit, "forum selection clauses can be equally applicable to contractual and tort causes of action" if the "resolution of the claims relates to interpretation of the contract." *Manetti-Farrow, Inc. v. Gucci Am., Inc.*, 858 F.2d 509, 514 (9th Cir. 1988).

Courts should interpret a forum selection clause by looking at the plain language of the clause. *Yan Guo v. Kyani, Inc.*, 311 F. Supp. 3d 1130, 1139 (C.D. Cal. 2018) ("Whether a forum selection clause applies . . . depends on the breadth of the language used in the forum selection clause."). When a forum selection clause contains the

language "arising hereunder," the clause is interpreted narrowly, and its scope is limited to disputes "relating to the interpretation and performance of the contract" containing the forum selection clause. *Cape Flattery Ltd. v. Titan Maritime, LLC*, 647 F.3d 914, 922 (9th Cir. 2011). By contrast, "provisions that include or add phrases such as 'relating to' and 'in connection with'" are interpreted broadly. *LaCross v. Knight Transp., Inc.*, 95 F. Supp. 3d 1199, 1207 (C.D. Cal. 2015) (citing *Cape Flattery*, 647 F.3d at 922).

> The forum selection clause in the Bridge Loan Agreement states:
>
> Any suit, action or proceeding arising hereunder, or the interpretation, performance or breach hereof, shall, if EIN[] so elects, be instituted in any court sitting in New York State (the "Acceptable Forums"). The parties agree that the Acceptable Forums are convenient, and submit to the jurisdiction of the Acceptable Forums and waive any and all objections to jurisdiction or venue. Should a proceeding be initiated in any other forum, the parties waive any right to oppose any motion or application made by either party to transfer such proceedings to an Acceptable Forum.

(Bridge Loan Agreement 6, ¶ 4.5.) As the forum selection clause uses the language "arising hereunder," not "related to," the Court interprets the forum selection clause narrowly and limits its scope to disputes "relating to the interpretation and performance" of the Bridge Loan Agreement. *See Cape Flattery,* 647 F.3d at 922.

Here, none of Plaintiffs' claims require an interpretation of the Bridge Loan Agreement. For instance, Plaintiffs allege that Defendants promised to transition the Bridge Loan into the Term Loan after thirty days and that Defendants' failure to do so harmed Plaintiffs. (Compl. ¶¶ 63–71.) However, the Bridge Loan Agreement does not mention Defendants' promises regarding the Term Loan. (*See generally* Bridge Loan Agreement.) Similarly, Plaintiffs claim Hartford and EIN acted in concert to fraudulently induce Plaintiffs into the Bridge Loan Agreement. (Compl. ¶ 38.) However, Hartford is not mentioned in the Bridge Loan Agreement, as only EIN and IMS are parties to it. (*See generally* Bridge Loan Agreement.) Its terms relate only to the Bridge Loan and make no mention of any negotiations for the Term Loan or any

prior dealings between the parties; indeed, the Bridge Loan Agreement expressly "supersedes all prior agreements and understandings" relating to the Bridge Loan and "embodies the entire agreement" between IMS and EIN. (*Id.* at 6, ¶ 4.8.) Thus, interpreting the Bridge Loan Agreement would not inform the Court as to whether Defendants fraudulently induced or conspired against Plaintiffs. Instead, to determine the merit of Plaintiffs claims, the Court would have to look to evidence outside the Bridge Loan Agreement.

As mentioned above, the Ninth Circuit limits the scope of forum selection clauses containing the language "arising hereunder" to "disputes and controversies relating to the interpretation of the contract" itself. *Mediterranean Enters., Inc. v. Ssangyong Corp.*, 708 F.2d 1458, 1464 (9th Cir. 1983). As Plaintiffs' claims do not require interpretation of the Bridge Loan Agreement—the contract containing the clause—the Court finds that the forum selection clause does not apply to this action.

Thus, Defendants' Motion proceeds as a § 1404(a) motion to transfer, with the Court considering both the public and private interest factors. *See Atl. Marine*, 571 U.S. at 63–64 (holding that courts should ignore plaintiff's private interest factors only when a forum selection clause applies).

## B.   Southern District of New York as a Proper Venue

Before the Court can weigh the private and public interests in transferring venue, it must first determine whether venue in the Southern District of New York (the "Transferee Court") would be proper. An action may be brought in a transferee court when, at the time the action commenced, the transferee court possessed subject matter jurisdiction over the action, had personal jurisdiction over the defendants, and was a proper venue. *Rubio v. Monsanto Co.*, 181 F. Supp. 3d 746, 760 (C.D. Cal. 2016) (citing *A.J. Indus., Inc. v. U.S. Dist. Ct. for Cent. Dist. Cal.*, 503 F.2d 384, 386–88 (9th Cir. 1974)).

A court has diversity subject matter jurisdiction over an action when there is complete diversity between the parties "and the amount in controversy exceed[s]

$75,000." *Matheson v. Progressive Specialty Ins. Co.*, 319 F.3d 1089, 1090 (9th Cir. 2003); 28 U.S.C. § 1332. Here, Plaintiffs are California citizens, while Defendants are New York citizens. (NOR ¶ 5.) Furthermore, the amount Plaintiffs demand in their complaint exceeds $75,000. (*Id.* ¶ 6.) Accordingly, the Transferee Court possesses diversity subject matter jurisdiction over the action.

Under § 1404(a), "the transferee court [must] have [personal] jurisdiction over the defendants in the transferred complaint." *In re Genentech, Inc.*, 566 F.3d 1338, 1346 (Fed. Cir. 2009). "There is no requirement under § 1404(a) that a transferee court have jurisdiction over the plaintiff or that there be sufficient minimum contacts with the plaintiff . . . ." *Id.* Here, Defendants Naftali, Slavin, and Woodley are individuals and citizens of New York State. (NOR ¶ 5.) Defendant EIN is a New York corporation and maintains its principal place of business in New York State. (*Id.*) Thus, EIN is also a citizen of New York. *See* 28 U.S.C. § 1332(c)(1) ("[A] corporation shall be deemed to be a citizen of [the] State . . . by which it has been incorporated and of the State . . . where it has its principal place of business . . . ."). As such, the Transferee Court has personal jurisdiction over them. *See J. McIntyre Mach., Ltd. v. Nicastro*, 564 U.S. 873, 880 (2011) ("Citizenship or domicile—or, by analogy, incorporation or principal place of business for corporations—also indicates general submission to a State's powers.").

Finally, venue is generally proper in a district "if all defendants are residents of the State in which the district is located." 28 U.S.C. § 1391(a). Here, all the Defendants are residents of New York State—the state in which the Transferee Court is located. (NOR ¶ 5.) Accordingly, the Transferee Court is a proper venue.

As the District Court for the Southern District of New York possesses subject matter jurisdiction over the action, has personal jurisdiction over the defendants, and is a proper venue, the Court finds that this action *could* have been filed there.

**C.  Balancing Factors**

The Court next examines whether the convenience of the parties and witnesses and the interest of justice favor transfer. 28 U.S.C. § 1404(a).

*1. Convenience of the Parties*

When analyzing the convenience of the parties factor, courts should give deference to the plaintiff's choice of forum. *Catch Curve*, 2006 WL 4568799, at *1–2. "[A] transfer is not appropriate merely to shift the inconvenience from one party to another." *Safarian v. Maserati N. Am., Inc.*, 559 F. Supp. 2d 1068, 1071 (C.D. Cal. 2008). Additionally, when evaluating the weight given to the plaintiff's choice of forum, courts should consider "the extent both of the defendant's business contacts with the chosen forum and of the plaintiff's contacts, including those relating to his cause of action." *Pac. Car & Foundry Co. v. Pence*, 403 F.2d 949, 954 (9th Cir. 1968).

Here, Plaintiffs' contacts with the chosen forum are their residency and business operations within it. (Compl. ¶¶ 1–2.) Defendants' contacts with the chosen forum comprise their business dealings with Plaintiffs. Indeed, Defendants—who are all New York citizens—reached out to Plaintiffs in California to peddle their cash advance loans. (Compl. ¶ 23; Opp'n 10.) As this action concerns Defendants' business dealings with Plaintiffs in the chosen forum, the convenience of the parties favors keeping the action here. *See Pac. Car*, 403 F.2d at 954. Moreover, Defendants fail to establish, or even suggest, that the inconvenience to Defendants in litigating in California would outweigh the inconvenience to Plaintiffs in litigating in New York. (*See generally* Mot.) As such, this factor does not weigh in favor of transfer.

*2. Convenience of the Witnesses*

"The relative convenience to the witnesses is often recognized as the most important factor to be considered in ruling on a motion under § 1404(a)." *Metz v. U.S. Life Ins. Co.*, 674 F. Supp. 2d 1141, 1147 (C.D. Cal. 2009). The focus should be on the accessibility, materiality, and "importance of the anticipated witnesses' testimony" and not on "the number of witnesses in each location." *Gates Learjet Corp. v. Jensen*, 743 F.2d 1325, 1335–36 (9th Cir. 1984).

In the present action, IMS contends that Shahinian and other IMS employees will likely be key witnesses in Plaintiffs' case in chief. (*See* Opp'n 10–11.) For their part,

Defendants contend that they and their agents will likely be key witnesses in Defendants' case in chief. (*See* Reply 6–7.) As nothing suggests that witnesses on one side are more important than witnesses on the other, and Defendants bear the burden of persuasion as the moving party, the Court finds that this factor does not weigh in favor of transfer. *See L.A. Mem'l Coliseum Comm'n v. Nat'l Football League*, 89 F.R.D. 497, 499 (C.D. Cal. 1981) ("The burden of establishing that an action should be transferred is on the moving party.").

### 3. Interest of Justice

When evaluating the interest of justice, courts may consider "the administrative difficulties flowing from court congestion [and] the 'local interest in having localized controversies decided at home.'" *Decker Coal Co. v. Commonwealth Edison Co.*, 805 F.2d 834, 843 (9th Cir. 1986) (quoting *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 241 n.6 (1981)). Moreover, the Ninth Circuit provides the following eight additional factors that courts may consider:

> (1) [T]he location where the relevant agreements were negotiated and executed, (2) the state that is most familiar with the governing law, (3) the plaintiff's choice of forum, (4) the respective parties' contacts with the forum, (5) the contacts relating to the plaintiff's cause of action in the chosen forum, (6) the differences in the costs of litigation in the two forums, (7) the availability of compulsory process to compel attendance of unwilling non-party witnesses, and (8) the ease of access to sources of proof.

*Jones v. GNC Franchising, Inc.*, 211 F.3d 495, 498–499 (9th Cir. 2000). The Court considers the relevant factors in turn. *See Metz*, 674 F. Supp. 2d at 1148–1149 (considering only the relevant factors "that weigh for or against transfer of venue").

Local Interest: A court should consider the localized interests of the district in which it resides when weighing transfer. *Decker Coal*, 805 F.2d at 843. A district has a strong local interest when the "events at issue took place there." *Vu v. Ortho-McNeil Pharm., Inc.*, 602 F. Supp. 2d 1151, 1157 (N.D. Cal. 2009). The court need not consider whether another forum has an interest in the litigation, only that the chosen forum has

an identifiable local interest. *See Bos. Telecomms. Grp., Inc. v. Wood*, 588 F.3d 1201, 1212 (9th Cir. 2009) (finding that with this "factor, we ask only if there is an identifiable local interest in the controversy, not whether another forum also has an interest" (quoting *Tuazon v. R.J. Reynolds Tobacco Co.*, 433 F.3d 1163, 1182 (9th Cir. 2006)). Here, this district has a strong "identifiable local interest" in the litigation because Defendants reached into California when they solicited Plaintiffs with their cash advance loans. (Compl. ¶ 23; Opp'n 10.) As the Court has a localized interest in the controversy, this factor weighs against transfer.

Access to Evidence: Nothing suggests that litigating in the chosen forum would limit access to evidence or impede the transportation of evidence from New York to California. Furthermore, technological advancements have made access to evidence less burdensome. *See Szegedy v. Keystone Food Prod., Inc.*, No. 2:08-cv-5369-CAS (FFMx), 2009 WL 2767683, at *6 (C.D. Cal. Aug. 26, 2009) ("[E]ase of access to documents does not weigh heavily in the transfer analysis, given that advances in technology have made it easy for documents to be transferred to different locations.") As such, the access to evidence factor weighs against transfer.

Plaintiff's Choice of Forum: Deference is afforded to the plaintiff's choice of forum unless "the operative facts have not occurred within the forum of original selection and that forum has no particular interest in the parties or the subject matter." *Pac. Car*, 403 F.2d at 954; *Catch Curve*, 2006 WL 4568799, at *1–2. Here, the "operative facts" giving rise to Plaintiffs' claims are that Defendants reached into California and fraudulently induced Plaintiffs into the Bridge Loan Agreement. (*See* Compl. ¶¶ 37–38.) As these claims occurred in the chosen forum, the Central District of California, and this Court has a localized interest in the controversy, Plaintiffs' choice of forum is afforded substantial deference. (*Id.*) Thus, this factor weighs against transfer.

Additional Factors: The costs of litigation factor weighs against transfer, as Defendants fail to demonstrate why their prospective litigation costs in California

outweigh Plaintiffs' prospective costs in New York. *See Plasco, Inc. v. Auten*, No. CIV. C95-20146 SW, 1995 WL 354870, at *6 (N.D. Cal. June 7, 1995) (finding a transfer inappropriate where such a transfer merely shifts the inconvenience of litigation from one party to another). The familiarity with governing law factors does not shift the balance because, although the parties dispute whether New York or California law governs, (*see* Mot. 6; Opp'n 11), even if New York law governs this action, courts in "the Central District of California are fully capable of applying New York substantive law," *Metz*, 674 F. Supp. 2d at 1148. The remaining interest of justice factors are either against transfer, neutral, or not relevant. On balance, the Court finds that the overwhelming majority of interest of justice factors weigh heavily against transfer and favor keeping the matter in the chosen forum.

Based on the analysis above in weighing the private and public interest factors, the Court finds that Defendants fail to demonstrate that the convenience of the parties, witnesses, and the interest of justice favor transfer. As such, the Court finds transfer unwarranted.

## V.    CONCLUSION

For the reasons discussed above, the Court **DENIES** Defendants' Motion to Transfer. (ECF No. 69.)

**IT IS SO ORDERED.**

April 4, 2024

_____
OTIS D. WRIGHT, II
UNITED STATES DISTRICT JUDGE