Levi Y. Silver (SBN 273862)
lsilver@swsslaw.com
Owen M. Praskievicz (SBN 292439)
opraskievicz@swsslaw.com
**SOLOMON WARD SEIDENWURM & SMITH, LLP**
401 B Street, Suite 1200
San Diego, CA 92101
Phone: 619-231-0303

*Counsel for Defendants EIN Cap, Inc., Russel Naftali, and Gene Slavin*

S. YOUNG LIM (SBN 126679)
ylim@parkandlim.com
JESSIE Y. KIM (SBN 289173)
jessie@parkandlim.com
**PARK AND LIM**
3530 Wilshire Boulevard, Suite 1300
Los Angeles, CA 90010
(t) 213.386.5595
(f) 213.384.7110

*Counsel for Defendants Kevin Woodely, EIN Cap, Inc., Russel Naftali, and Gene Slavin*

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION**

IT'S MY SEAT, INC., a California corporation; VAHE SHAHINIAN, an individual,

Plaintiffs,

v.

HARTFORD CAPITAL LLC, a Limited Liability Company; KEVIN WOODLEY, an individual; EIN CAP, INC., a New York Corporation; RUSSELL NAFTALI, an individual; GENE SLAVIN, an individual; and DOES 1 through 100, inclusive,

Defendants.

Case No. 2:22-cv-02192-ODW-AJR

Related Case:
Case No.: 2:20-cv-06378-ODW-AFM

**DEFENDANTS' MEMORANDUM OF CONTENTIONS OF FACT AND LAW**

District Judge: Hon. Otis D. Wright, III
Magistrate Judge: A. Joel Richlin

Trial Date: March 31, 2026
Time: 9:00 a.m.

# TABLE OF CONTENTS

Page

CLAIMS AND DEFENSES ........ 1

A. Plaintiffs' Claims ........ 1

1. Summary of Claims Plaintiffs Plan to Pursue ........ 1

2. Elements Required to Establish Plaintiffs' Claims ........ 2

(a) Claim 1: Civil RICO (18 U.S.C. § 1962(c)) ........ 2

(i) Preliminary Note ........ 2

(ii) Elements of a "Pattern or Racketeering Activity" RICO Claim (18 U.S.C. §§ 1962(c), 1961(5)) ........ 3

(iii) Elements of a "Collection of an Unlawful Debt" RICO Claim (18 U.S.C. §§ 1962(c), 1961(6)) ........ 7

(b) Claim 2: Civil RICO Conspiracy (18 U.S.C. § 1962(d)) ........ 9

(c) Claim 3: Promissory Estoppel ........ 10

(d) Claims 4 and 5: Fraud & Intentional Misrepresentation: ........ 11

(e) Claim 6: Negligent Misrepresentation ........ 12

(f) Claim 7: UCL ........ 13

3. Key Evidence In Opposition To Plaintiffs' Claims ........ 13

(a) Claim 1: Civil RICO (18 U.S.C. § 1962(c)) ........ 13

(b) Claim 2: Civil RICO Conspiracy (18 U.S.C. § 1962(d)) ........ 15

(c) Claims 4, 5, and 6: Fraud, Intentional Misrepresentation, Negligent Misrepresentation ........ 17

(d) Claim 7: UCL ........ 19

(e) Damages (All Claims) ........ 20

B. Defendants' Defenses ........ 20

1. Summary of Affirmative Defenses Defendants Intend to Pursue at Trial 20

2. Elements of Affirmative Defenses ........ 22

(a) Failure to State a Claim: 22
(b) Judicial Estoppel: 23
(c) Unclean Hands; Waiver; Equitable Estoppel; In Peri Delicto; Fraud in the Inducement: 24
(d) Damages Resulted Solely from Plaintiffs' Fault; Contributory Negligence; Comparative Fault; Active and Primary Fault 25
(e) Statute of Limitations: 26
(f) Offset: 26
(g) Failure to Mitigate: 26
(h) Release: 27
3. Key Evidence In Support Of Defenses 27
(a) Failure to State a Claim 27
(b) Judicial Estoppel 28
(c) Unclean Hands; Waiver; Equitable Estoppel; In Pari Delicto; Fraud in the Inducement 29
(d) Damages Resulted Solely from Plaintiffs' Fault / Contributory Negligence / Comparative Fault / Active and Primary Fault 30
(e) Statute of Limitations 30
(f) Offset 31
(g) Failure to Mitigate 31
(h) Release 31
ANTICIPATED EVIDENTIARY ISSUES 32
ISSUES OF LAW 34
ATTORNEYS' FEES 37
ABANDONMENT OF ISSUES 38

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Adar Bays, LLC v. GeneSYS ID, Inc.*,
37 N.Y.3d 320, 157 N.Y.S.3d 800, 179 N.E.3d 612 (2021) .......... 9

*Advanced Choices, Inc. v. State Dep't of Health Services*,
182 Cal. App. 4th 1661 (Cal. Ct. App. 2010) .......... 10

*Apollo Capital Fund LLC v. Roth Capital Partners, LLC*,
158 Cal. App. 4th 226 (Cal. Ct. App. 2007) .......... 13

*Baros v. Credico USA LLC*,
No. 8:25-cv-0047-JWH-ADS, 2025 U.S. Dist. LEXIS 63533 (C.D. Cal. Feb. 19, 2025) .......... 7

*Coast Dental Servs., LLC v. Ozder Dental Corp.*,
No. LA CV 19-04066, 2020 WL 3840438 (C.D. Cal. Apr. 3, 2020) .......... 10

*Corona v. Novartis Phamaceuticals Corp.*,
No. CV 11-0156 MMM, 2012 U.S. Dist. LEXIS 209067 (C.D. Cal. May 21, 2012) .......... 12

*Cunningham v. Quick Whiz Funding, Inc.*,
No. 8:19-cv-01002-RGK-CEx, 2019 U.S. Dist. LEXIS 227720 (C.D. Cal. Dec. 12, 2019) .......... 12

*Downey Hyundai, Inc. v. Mustafa Amin*,
No. 5:25-cv-00357-MRA-DTB, 2025 U.S. Dist. LEXIS 261088 (C.D. Cal. Dec. 16, 2025) .......... 7

*Eclectic Props. E., LLC v. Marcus & Millichap Co.*,
751 F.3d 990 (9th Cir. 2014) .......... 6

*Freeman v. Penn Mut. Life Ins. Co.*,
No. 2:24-cv-10840-SPG-MAA, 2025 U.S. Dist. LEXIS 251710 (C.D. Cal. Dec. 3, 2025) .......... 6

*Ghirardo v. Antonioli*,
8 Cal. 4th 791 (Cal. 1994) .......... 9

*Haymount Urgent Care PC v. GoFund Advance, LLC*,
690 F. Supp. 3d 167 (S.D.N.Y. 2023) .......... 9

*Heredia v. Intuitive Surgical, Inc.*,
No. 5:15-cv-02662-EJD, 2015 U.S. Dist. LEXIS 160366 (N.D. Cal. Nov. 30, 2015) .......... 11

*Howard v. Am. Online Inc.*,
208 F.3d 741 (9th Cir. 2000) .......... 10

*J.L. v. Children's Inst., Inc.*
177 Cal. App. 4th 388 (Cal. Ct. App. 2009) .......... 11

*Jackson v. BellSouth Telecomm'ns*,
372 F.3d 1250 (11th Cir. 2004) .......... 10

*Malley v. San Jose Midtown Dev. LLC*,
No. 5:20-cv-01925, 2022 WL 62915 (N.D. Cal. Jan. 6, 2022) .......... 10

*Pac. Recovery Sols. v. United Behav. Health*,
481 F. Supp. 3d 1011 (N.D. Cal. 2020) .......... 7

*People v. Austin*,
23 Cal. App. 4th 1596 (Cal. Ct. App. 1994) .......... 12

*Port Medical Wellness v. Connecticut General Life Ins. Co.*
24 Cal. App. 5th 153 (Cal. Ct. App. 2018) .......... 11

*Salinas v. United States*,
522 U.S. 52 (1997) .......... 10

*Sundance Land Corp. v. Cmty. First Fed. Sav. & Loan Ass'n*
840 F.2d 653 (9th Cir. 1988) .......... 9

*Thrifty Payless, Inc. v. The Americana at Brand, LLC*,
218 Cal. App. 4th 1230 (Cal. Ct. App. 2013) .......... 11

*Turner v. Cook*,
362 F.3d 1219 (9th Cir. 2004) .......... 9

*Walter v. Drayson*,
538 F.3d 1244 (9th Cir. 2008) .......... 6

*In re WellPoint, Inc., Out-of-Network "UCR" Rates Litig.*,
865 F. Supp. 2d 1002 (C.D. Cal. 2011) .......... 7

*Wyatt v. Union Mortgage Co.*,
24 Cal. 3d 773 (Cal Ct. App. 1979)....12

*Youst v. Longo*,
43 Cal. 3d 64 (Cal. Ct. App. 1987)....12

*Zavala v. Wal-mart Stores, Inc.*,
691 F.3d at 539-40....10

**Statutes**

18 U.S.C. § 1961(1)....2, 5

18 U.S.C. § 1962(c)....*passim*

18 U.S.C. §§ 1962(c), 1961(5)....3

18 U.S.C. §§ 1962(c), 1961(6)....7

18 U.S.C. § 1962(d)....1, 3, 9, 10

California's Unfair Competition Law, California Business and Professions Code § 17200....1

New York Penal Law § 190.40....9

RICO....*passim*

**Other Authorities**

California Constitution, article XV, section 1....9

Ninth Circuit Manual of Model Civil Jury Instructions § 15.35....7

Ninth Circuit Manual of Model Civil Jury Instructions § 8....6, 9

Pursuant to Local Rule 16-4, Defendants Kevin Woodley ("Woodley"), Ein Cap, Inc. ("EIN"), Russell Naftali ("Naftali") and Glen Slavin ("Slavin", collectively "Defendants") submit this Memorandum of Contentions of Fact and Law. Defendants reserve the right to amend and/or supplement these contentions based on this Court's pretrial rulings and other pre-trial findings and events.

## CLAIMS AND DEFENSES

### A. Plaintiffs' Claims

#### 1. Summary of Claims Plaintiffs Plan to Pursue

Plaintiffs It's My Seat, Inc. ("IMS") and Vahe Shahinian ("Shahinian", collectively "Plaintiffs") have indicated that they intend to pursue the following claims at trial.

**Claim 1**: Civil liability under the Racketeer Influenced and Corrupt Organizations Act (RICO) for collection of unlawful debt against Naftali, Woodley, and Slavin in violation of 18 U.S.C. § 1962(c).[1]

**Claim 2**: Civil RICO liability for conspiracy against Defendants in violation of 18 U.S.C. § 1962(d).

**Claim 3**: Promissory estoppel against EIN, Woodley, and Naftali.

**Claim 4**: Fraud against EIN, Woodley, and Naftali.

**Claim 5**: Intentional misrepresentation against EIN, Woodley, and Naftali.

**Claim 6**: Negligent misrepresentation against EIN, Woodley, and Naftali.

**Claim 7**: Violation of California's Unfair Competition Law (UCL), California Business and Professions Code § 17200 against all Defendants.

---

[1] As detailed in Defendants' Motion in Limine ("MIL") 1 and 2, Plaintiffs have significantly deviated from the RICO claims stated in their complaint and now pursue RICO claims based upon an alleged "collection of unlawful debt" and the predicate acts of bank and wire fraud. Defendants object to these new claims.

### 2. Elements Required to Establish Plaintiffs' Claims

#### (a) Claim 1: Civil RICO (18 U.S.C. § 1962(c))

##### (i) Preliminary Note

RICO section 1962(c) permits two distinct claims: (i) for a "pattern of racketeering activity" as defined in § 1961(5) (defining "pattern of racketeering activity") and § 1961(1) (defining "racketeering activity") (hereafter, "**Pattern of Racketeering Activity Claims**"); or alternatively (ii) for "collection of an unlawful debt" as defined in § 1961(6) (hereafter "**Unlawful Debt Claims**"). These are distinct claims with distinct elements and pleading requirements.

Plaintiffs impermissibly seek to include both of these distinct claims in the Pretrial Conference Order and to pursue them both at trial. As recited elsewhere in this Order and throughout Plaintiffs' pretrial documents, Plaintiffs seek to pursue: (i) a Pattern of Racketeering Activity Claim premised on Plaintiffs' allegation (contained in the Complaint) that Defendants committed two acts of "racketeering activity"; and (ii) a separate Unlawful Debt Claim premised on Plaintiffs' contention that the "Merchant Agreement" between the parties is an "unlawful debt."

Plaintiffs' purported § 1961(6) Unlawful Debt Claim is not "contained in the complaint . . . [or] any court authorized amendment or supplement." Local Rules Appendix A ¶ VII. As explained at length in Defendants' Motion in Limine ("**MIL**") No. 1 (to be filed by March 4, 2026): (i) the Complaint expressly limits Plaintiffs' RICO claim to a § 1961(5) "pattern of racketeering activity"; (ii) the Complaint does not state a § 1961(6) Unlawful Debt Claim and gives no notice of any such claim; (iii) Plaintiffs' purported Unlawful Debt Claim is premised on the Merchant Agreement, and Plaintiffs are judicially estopped from contending the Complaint asserts any claims premised on the Merchant Agreement because Plaintiffs previously represented to the Court (in successfully opposing Defendants' motion to transfer this action based on the Merchant Agreement's forum selection clause) that no claims in the Complaint "arise from . . . the Merchant Agreement" and that the

Merchant Agreement "is not part of any of the claims in the Complaint"; and (iv) Plaintiffs previously requested leave to amend their Complaint to add the very Unlawful Debt Claim Plaintiffs now seek to include in the Pretrial Conference Order, and the Court denied leave, making clear this claim is not part of this case. Thus, Plaintiffs' purported § 1961(6) Unlawful Debt Claim may not "be included in this Final Pretrial Conference Order" or pursued at trial. Local Rules Appendix A ¶ VII.

Plaintiffs' RICO § 1962(d) claim (Claim 2) is derivative of Plaintiffs' § 1962(c) claims and, as explained above, the Complaint expressly limits the § 1962(c) claim to a "pattern of racketeering activity." For the same reasons the Complaint does not contain a § 1962(c) premised on "collection of an unlawful debt," it similarly does not contain a § 1962(d) claim premised on "collection of an unlawful debt."

Following the elements of a Pattern of Racketeering Activity Claim and an Unlawful Debt Claim, respective.

**(ii) Elements of a "Pattern or Racketeering Activity" RICO Claim (18 U.S.C. §§ 1962(c), 1961(5))**

Plaintiffs must prove that each Defendant:

1. participated in the conduct;
2. of an enterprise that affects interstate commerce;
3. through a pattern;
4. of racketeering activity;
5. causing harm to plaintiff's business or property.

**Enterprise**: An "enterprise" may consist of an individual, partnership, corporation, association, or other legal entity. Alternatively, an "enterprise" may consist of an "associated-in-fact" enterprise. An associated-in-fact enterprise is a group of persons associated together for a common purpose of engaging in a course of conduct. Its existence is proven through evidence of an ongoing organization,

formal or informal, and evidence that the various associates function as a continuing unit. No particular organizational structure, separate or otherwise, is necessary for an associated-in-fact enterprise. To show the existence of a RICO enterprise, Plaintiffs must prove that the enterprise has (A) a common purpose, (B) a structure or organization, and (C) longevity necessary to accomplish that purpose. To show a common purpose sufficient to prove the existence of RICO enterprise, Plaintiffs must show more than the parties engaging in ordinary business conduct and an ordinary business purpose.

**Participation**: To prove participation, Plaintiffs must prove that each Defendant was aware of the essential nature and scope of the enterprise and intended to participate in it.

**Conduct**: To prove the conduct element, Plaintiffs must prove that each Defendant actively conducted or participated in conducting the affairs of the alleged enterprise through a pattern of racketeering activity. Each Defendant does not need to participate in, or be aware of, all of the enterprise's activities. It is sufficient if each Defendant conducted or participated in the conduct of some of the enterprise's activities through a pattern of racketeering activity. In determining whether the conduct element has been satisfied, relevant questions include whether the defendant occupies a position in the chain of command, knowingly implements the enterprise's decisions, or is indispensable to achievement of the enterprise's goal. Simply performing services for the enterprise does not rise to the level of direction. Likewise, it is not enough that a defendant failed to stop illegal activity of the enterprise. Evidence showing that a Defendant conducted its own affairs, or that fails to show that each Defendant committed acts toward the alleged common illegal purpose, is insufficient to raise the inference that the Defendant conducted the affairs of an enterprise.

**Pattern**: To prove the pattern element, Plaintiffs must prove a pattern of racketeering activity by each Defendant. A pattern of racketeering activity means at

least two acts of racketeering activity within ten years of each other. Proving two acts of racketeering activity is a necessary condition for finding a violation but may not be sufficient. To prove a pattern of racketeering activity, Plaintiffs must show that the acts were related to one another and to the enterprise. Related conduct embraces criminal acts that have the same or similar purposes, results, participants, victims, or methods of commission, or otherwise are interrelated by distinguishing characteristics and are not isolated events. To make up a pattern of racketeering activity, predicate acts must demonstrate continuity. Continuity can be demonstrated in two ways. The first is to demonstrate related predicate acts extending over a substantial period of time. The second is to show conduct that does not occur over a substantial period of time but, by its nature, is likely to be repeated into the future.

**Racketeering Activity**: To constitute racketeering activity, the relevant conduct must consist of at least one of the indictable predicate acts listed in 18 U.S.C. § 1961(1). Racketeering activity acts must be proved by a preponderance of the evidence.

Plaintiffs predicate their alleged "pattern of racketeering activity" upon the following two alleged acts of wire fraud: (i) a January 8, 2019 representation made by non-party Stein to Plaintiffs that Plaintiffs were "pre-approved" for a $750,000 line of credit; and (ii) March 2019 representations made by defendant Woodley to Plaintiffs that Woodley could secure a Wells Fargo loan.

The elements required to establish Plaintiffs' claims for wire fraud are:

1. the defendant knowingly participated in, devised or intended to devise a scheme or plan to defraud for the purpose of obtaining money or property by means of false or fraudulent pretenses, representations, or promises;
2. the statements made as part of the scheme were material; that is, they had a natural tendency to influence, or were capable of influencing, a person to part with money or property;

3. the defendant acted with the intent to defraud, that is, the intent to deceive and cheat;

4. the defendant used, or caused to be used, an interstate wire communication to carry out or attempt to carry out an essential part of the scheme.

The false or fraudulent pretenses, representations, or promises must directly or indirectly deceive the plaintiff about the nature of the bargain. A misrepresentation will go to the nature of the bargain if it goes to price or quality, or otherwise to essential aspects of the transaction. Whether a misrepresentation goes to the nature of the bargain may depend on the specific transaction at issue.

<u>Authority for RICO elements</u>: Ninth Circuit Manual of Model Civil Jury Instructions at § 8, Civil RICO 19 (2025) (collecting cases); *Eclectic Props. E., LLC v. Marcus & Millichap Co.*, 751 F.3d 990, 997 (9th Cir. 2014) ("To show the existence of [a RICO] enterprise . . . plaintiffs must plead that the enterprise has (A) a common purpose, (B) a structure or organization, and (C) longevity necessary to accomplish that purpose."); *Walter v. Drayson*, 538 F.3d 1244, 1249 (9th Cir. 2008) (in determining whether the conduct element has been satisfied, relevant questions include whether the defendant "occup[ies] a position in the 'chain of command,'" "knowingly implement[s] [the enterprise's] decisions," or is "indispensable to achievement of the enterprise's goal"; "[s]imply performing services for the enterprise does not rise to the level of direction"; "it is not enough that [a defendant] failed to stop illegal activity"); *Freeman v. Penn Mut. Life Ins. Co.*, No. 2:24-cv-10840-SPG-MAA, 2025 U.S. Dist. LEXIS 251710, at *20 (C.D. Cal. Dec. 3, 2025) ("To state a claim, Plaintiffs must allege facts to show that each Defendant: (1) participated in the conduct; (2) of an enterprise that affects interstate commerce; (3) through a pattern; (4) of racketeering activity; (5) causing harm to plaintiff's business or property.") (citing *Eclectic Props. E., LLC v. Marcus & Millichap Co.*, 751 F.3d 990, 997 (9th Cir. 2014), and *Smagin v. Yegiazaryan*, 37 F.4th 562, 566

(9th Cir. 2022)); *Downey Hyundai, Inc. v. Mustafa Amin*, No. 5:25-cv-00357-MRA-DTB, 2025 U.S. Dist. LEXIS 261088, at *12-14 (C.D. Cal. Dec. 16, 2025) ("Courts routinely dismiss RICO claims 'containing allegations of ordinary business transactions'"; "allegations that 'only demonstrate that the parties are associated in a manner directly related to their own primary business activities' are insufficient to establish common purpose"; claim fails "where plaintiff failed to plausibly allege facts that show defendants committed acts towards' alleged common purpose"; claim fails where plaintiff fails to show defendants "had joined together to create a distinct entity for purposes of committing illegal acts"; claim fails where plaintiffs fail to show that "'actions were undertaken on behalf of the *enterprise* as opposed to on behalf of each defendant in its individual capacity to advance its own individual interests.'") (clean up; citations omitted; emphasis in original); *Pac. Recovery Sols. v. United Behav. Health*, 481 F. Supp. 3d 1011, 1027 (N.D. Cal. 2020) ("Allegations showing that a defendant conducted its own affairs is insufficient to raise the inference that the defendant conducted the affairs of an enterprise."); *Baros v. Credico USA LLC*, No. 8:25-cv-0047-JWH-ADS, 2025 U.S. Dist. LEXIS 63533, at *7 (C.D. Cal. Feb. 19, 2025) ("'Where RICO claims under § 1962(c) are asserted against multiple defendants, a plaintiff must allege at least two predicate acts by each defendant.'") (quoting *Committee to Protect Our Agricultural Water v. Occidental Oil and Gas Corporation*, 235 F. Supp. 3d 1132, 1177 (E.D. Cal. 2017) (collecting cases)); *In re WellPoint, Inc., Out-of-Network "UCR" Rates Litig.*, 865 F. Supp. 2d 1002, 1035 (C.D. Cal. 2011) (a "plaintiff must allege at least two predicate acts by each defendant").

<u>Authority for wire fraud elements</u>: Ninth Circuit Manual of Model Criminal Jury Instructions at § 15.35 (2025).

**(iii) Elements of a "Collection of an Unlawful Debt" RICO Claim (18 U.S.C. §§ 1962(c), 1961(6))**

Plaintiffs must prove that each Defendant:

1. participated in the conduct;
2. of an enterprise that affects interstate commerce;
3. through collection of a debt;
4. the debt was unenforceable in whole or in part because of state or federal laws relating to usury;
5. the debt was incurred in connection with the business of lending money at a usurious rate;
6. the usurious rate was at least twice the enforceable rate; and
7. as a result of the above confluence of factors, each Plaintiff was injured in its business or property.

Plaintiffs assert that the Merchant Agreement between IMS and EIN was a debt that was unenforceable in whole or in part because of laws relating to usury. To sustain this assertion, Plaintiffs must prove that the MCA Agreement was usurious under both New York law and California law.

The elements necessary to show the MCA Agreement was usurious under New York law are:

8. The transaction must be a loan or forbearance rather than a purchase of receivables;
9. the interest to be paid must exceed the statutory minimum of 25% per annum;
10. the loan and interest must be absolutely repayable by the borrower; and
11. the lender must have willful intent to enter into a usurious transaction.

The elements necessary to show the MCA Agreement was usurious under California law are:

1. The transaction must be a loan or forbearance rather than a purchase of receivables;
2. the interest to be paid must exceed the statutory minimum of 10% per annum;

3. the loan and interest must be absolutely repayable by the borrower; and

4. the lender must have willful intent to enter into a usurious transaction.

**Authority for RICO elements**: Ninth Circuit Manual of Model Civil Jury Instructions at § 8, Civil RICO 19 (2025) (elements "i" and "ii"); *Sundance Land Corp. v. Cmty. First Fed. Sav. & Loan Ass'n* 840 F.2d 653, 666 (9th Cir. 1988) ("To make out a claim that what was collected was an 'unlawful debt' within the meaning of RICO, [a plaintiff] must allege facts sufficient to prove, *inter alia*, that '[1] the debt was unenforceable in whole or in part because of state or federal laws relating to usury, [2] the debt was incurred in connection with the "business of lending money at a usurious rate," . . . [3] the usurious rate was at least twice the enforceable rate . . . [4] as a result of the above confluence of factors, it was injured in its business or property.'") (cleaned up; citation omitted).

**Authority for choice of law:** *Haymount Urgent Care PC v. GoFund Advance, LLC*, 690 F. Supp. 3d 167 (S.D.N.Y. 2023).

**Authority for New York usury law:** New York Penal Law § 190.40; *Adar Bays, LLC v. GeneSYS ID, Inc.*, 37 N.Y.3d 320, 157 N.Y.S.3d 800, 179 N.E.3d 612, 621 (2021).

**Authority for California usury law**: California Constitution, article XV, section 1; *Ghirardo v. Antonioli*, 8 Cal. 4th 791 (Cal. 1994); *O'Conner v. Televideo System, Inc.*, 218 Cal. App. 3d 709, 713 (Cal. Ct. App. 1990).

**(b) Claim 2: Civil RICO Conspiracy (18 U.S.C. § 1962(d)).**

Section 1962(d) makes it "unlawful for any person to conspire to violate any of the provisions of subsection (a), (b), or (c) of this section." 18 U.S.C. § 1962(d). Where a plaintiff fails to provide the substantive elements of a RICO claim, it also fails to show a RICO conspiracy. *Turner v. Cook*, 362 F.3d 1219, 1231 n.17 (9th Cir. 2004) ("Because appellants failed to allege the requisite substantive elements of a RICO claim under 18 U.S.C. § 1962(c), appellants' claim under 18 U.S.C. § 1962(d), which makes it 'unlawful for any person to conspire to violate any of the

provisions of subsections (a), (b), or (c) of this section,' also fails."); *Malley v. San Jose Midtown Dev. LLC*, No. 5:20-cv-01925, 2022 WL 62915, at *7 (N.D. Cal. Jan. 6, 2022); *Coast Dental Servs., LLC v. Ozder Dental Corp.*, No. LA CV 19-04066, 2020 WL 3840438, at *4 (C.D. Cal. Apr. 3, 2020). Because Plaintiffs have failed to prove a violation of § 1962(c), they cannot prove a conspiracy claim under § 1962(d).

"To establish a violation of section 1962(d), Plaintiffs must allege either an agreement that is a substantive violation of RICO or that the defendants agreed to commit, or participated in, a violation of two predicate offenses." *Howard v. Am. Online Inc.*, 208 F.3d 741, 751 (9th Cir. 2000). While it is true that a defendant may be liable under section 1962(d) even where he "does not himself commit or agree to commit the two or more predicate acts requisite to the underlying offense" (*Salinas v. United States*, 522 U.S. 52, 65 (1997) ("one can be a conspirator by agreeing to facilitate only some of the acts leading to the substantive effect"), but to violate Section 1962(d) the conspirators "must have agreed to commit an act that is itself illegal—parties cannot be found guilty of conspiring to commit an act that is itself not against the law." *Jackson v. BellSouth Telecomm'ns*, 372 F.3d 1250, 1269 (11th Cir. 2004). To that end, evidence showing that defendants only conspired to commit unlawful predicate acts, as opposed to a conspiracy to violate RICO, requires dismissal. *Zavala v. Wal-Mart Stores Inc.*, 691 F.3d 527, 539-40 (3d Cir.).

**(c) Claim 3: Promissory Estoppel**

To prove their claim for promissory estoppel, Plaintiffs must show (1) a promise clear and unambiguous in its terms; (2) reliance by the party to whom the promise is made; (3) the reliance must be both reasonable and foreseeable; and (4) the party asserting the estoppel must be injured in his reliance. *Advanced Choices, Inc. v. State Dep't of Health Services*, 182 Cal. App. 4th 1661, 1672 (Cal. Ct. App. 2010).

/ / /

**(d) Claims 4 and 5: Fraud & Intentional Misrepresentation:**

The elements for fraud and intentional misrepresentation both require: (a) a misrepresentation (false representation, concealment, or nondisclosure); (b) knowledge of falsity (or 'scienter'); (c) intent to defraud, i.e., to induce reliance; (d) justifiable reliance; and (e) resulting damage. *Thrifty Payless, Inc. v. The Americana at Brand, LLC*, 218 Cal. App. 4th 1230, 1239 (Cal. Ct. App. 2013) (fraud); *Port Medical Wellness v. Connecticut General Life Ins. Co.* 24 Cal. App. 5th 153, 178 (Cal. Ct. App. 2018) (intentional misrepresentation).

*Agency*: Where a plaintiffs' claims rely on a theory of agency, a plaintiff must either establish actual agency or ostensible agency. Actual agency requires: "(1) An agent or apparent agent holds a power to alter the legal relations between the principal and third persons and between the principal and himself; (2) an agent is a fiduciary with respect to matters within the scope of the agency; and (3) a principal has the right to control the conduct of the agent with respect to matters entrusted to him." *Heredia v. Intuitive Surgical, Inc.*, No. 5:15-cv-02662-EJD, 2015 U.S. Dist. LEXIS 160366, at *6 (N.D. Cal. Nov. 30, 2015) (citing *Garlock Sealing Techs., LLC v. NAK Sealing Techs. Corp.*, 148 Cal. App. 4th 937, 964. (Cal. Ct. App. 2007)).

Ostensible agency requires: (1) The person dealing with an agent must do so with a reasonable belief in the agent's authority; (2) such belief must be generated by some act or neglect by the principal sought to be charged; and (3) the person relying on the agent's apparent authority must not be negligent in holding that belief. *J.L. v. Children's Inst., Inc.* 177 Cal. App. 4th 388, 403-04 (Cal. Ct. App. 2009). Ostensible agency cannot be established by the representations or conduct of the purported agent; the statements or acts of the principal must be such as to cause the belief the agency exists. *Id.* "To prove the existence of ostensible authority, the principal . . . must have behaved in such a way that a third party would have believed the agent acted on its behalf. 'Put another way, ostensible authority arises

only where the conduct of the principal causes the third party "reasonably to believe" that the agent has authority to act in the matter; from the point of view of the third party, the transaction must seem "regular on its face."'" *Corona v. Novartis Phamaceuticals Corp.*, No. CV 11-0156 MMM (PJWx), 2012 U.S. Dist. LEXIS 209067, at *21 (C.D. Cal. May 21, 2012).

*Conspiracy to Defraud*: Where a plaintiff's claims rely on claims of conspiracy, the plaintiff must prove "the formation and operation of the conspiracy and damages resulting to plaintiff from an act or acts done in furtherance of the common design."' *Cunningham v. Quick Whiz Funding, Inc.*, No. 8:19-cv-01002-RGK-CEx, 2019 U.S. Dist. LEXIS 227720, at *8 (C.D. Cal. Dec. 12, 2019) (citation omitted). "'A party seeking to establish a civil conspiracy must show that each member of the conspiracy acted in concert and came to a mutual understanding to accomplish a common and unlawful plan, and that one or more of them committed an overt act to further it."' *Id*. (citation omitted). "'It is not enough that the conspirators knew of an intended wrongful act, they must agree—expressly or tacitly—to achieve it."' *Id.*, at *9 (citation omitted); *see Youst v. Longo*, 43 Cal. 3d 64, 79 (Cal. Ct. App. 1987) ("the conspirators must agree to do some act which is classified as a 'civil wrong' "). The conspiring defendants must also have actual knowledge that a tort is planned and concur in the tortious scheme with knowledge of its unlawful purpose. *Wyatt v. Union Mortgage Co.*, 24 Cal. 3d 773, 784-786 (Cal Ct. App. 1979) ("a plaintiff is entitled to damages from those defendants who concurred in the tortious scheme with knowledge of its unlawful purpose"); *People v. Austin*, 23 Cal. App. 4th 1596, 1607 (Cal. Ct. App. 1994) ("without knowledge of the illegal purpose there is no basis for inferring an agreement").)

**(e) Claim 6: Negligent Misrepresentation**

To prove a claim for negligent misrepresentation, plaintiffs must show (1) the misrepresentation of a past or existing material fact, (2) without reasonable grounds for believing it to be true, (3) with intent to induce another's reliance on the fact

misrepresented, (4) justifiable reliance on the misrepresentation, and (5) resulting damage. *Apollo Capital Fund LLC v. Roth Capital Partners, LLC*, 158 Cal. App. 4th 226, 243 (Cal. Ct. App. 2007).

**(f) Claim 7: UCL**

California's unfair competition law (UCL) prohibits "unlawful, unfair or fraudulent business act[s] or practice[s]" and "unfair, deceptive, untrue or misleading advertising." Cal. Bus. & Prof. Code § 17200. Because each prong under the UCL supports a distinct theory of liability, *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1127 (9th Cir.), each prong requires a different showing. *Aerojet Rocketdyne, Inc. v. Glob. Aero., Inc.*, No. 2:17-cv-01515-KJM-AC, 2020 U.S. Dist. LEXIS 121802, at *21 (E.D. Cal. July 9, 2020).

**3. KEY EVIDENCE IN OPPOSITION TO PLAINTIFFS' CLAIMS**

Defendants provide the following summary of key evidence they expect to offer at trial in response to Plaintiffs' claims.

**(a) Claim 1: Civil RICO (18 U.S.C. § 1962(c))**

- Defendants intend to introduce at least the following categories of testimony and evidence establishing that Plaintiffs cannot establish this claim.
- Pleadings, testimony, and evidence establishing that Plaintiffs have not pled an "unlawful debt" RICO claim. Plaintiffs' Complaint alleges only a "pattern of racketeering activity" under § 1961(5) and makes no mention of "unlawful debt," usury, or the elements required for an unlawful-debt RICO claim. On October 9, 2025, the Court denied Plaintiffs' untimely motion for leave to amend to add these unpled allegations.
- Pleadings, testimony, and evidence establishing that Plaintiffs have not pled any "pattern of racketeering activity" predicate acts other than Bryan Stein aka Boris Shteyngart's ("Stein") alleged false January 8, 2019 promise to provide a line of credit to IMS. On May 16, 2025, Plaintiffs disclosed for the first time that they intended to assert RICO claims based on purported

predicate acts of "wire fraud" and "bank fraud" not alleged in the Complaint and not pled with the particularity required by Fed. R. Civ. P. 9(b).

- Pleadings, testimony, and evidence establishing that Plaintiffs are judicially estopped from presenting their purported "unlawful debt" RICO claim. In successfully opposing Defendants' November 2023 motion to transfer to the Southern District of New York, Plaintiffs unequivocally represented to the Court that none of their claims are "related to the interpretation or performance of the Merchant Agreement," that there is "no nexus between [their] claims and the Merchant Agreement," and that "the Merchant Agreement [is] not part of any claims." The Court relied on these representations in denying transfer.
- Testimony and evidence showing that the Merchant Agreement (D1028) is a sale agreement, not a loan agreement.
- Testimony and evidence showing all parties intended and understood that the Merchant Agreement is a sale, not a loan. Shahinian understood the nature and terms of MCA agreements.
- Testimony and evidence showing that the Merchant Agreement is not a usurious loan under either New York or California law. The MCA's payment structure (revenue-dependent daily payments with no fixed term, no recourse against the merchant, and EIN bearing the risk of sales decline) is inconsistent with a loan.
- Testimony and evidence showing that Plaintiffs cannot show a RICO enterprise in fact. The evidence shows only routine, arm's-length business relationships. The Hartford ISO Agreement establishes Hartford as an independent sales organization—not an agent of EIN—and expressly prohibits Hartford from binding EIN. Stein was not even a party to the ISO Agreement.

/ / /

- Testimony and evidence showing that Plaintiffs cannot show that each Defendant conducted the affairs of the alleged RICO enterprise. Woodley had zero involvement in the IMS transaction: he did not introduce IMS to EIN, did not participate in underwriting, and played no role in EIN's decision to fund. Slavin had zero involvement in underwriting or approval. Naftali was not meaningfully involved; his role, if any, was supervisory only.
- Testimony and evidence showing that Plaintiffs cannot show that each Defendant participated in collecting an alleged "unlawful debt" from Plaintiffs.
- Testimony and evidence establishing that Plaintiffs cannot show they suffered losses proximately caused by Defendants' alleged RICO violations, as contrasted with other or supervening events or causes.
- Testimony and evidence establishing that no Defendant committed two RICO predicate acts, including mail fraud, wire fraud, etc.
- Testimony and evidence establishing that Plaintiffs cannot show a "pattern of racketeering activity," including because Plaintiffs alleged only a single fraudulent transaction and/or Plaintiffs cannot show continuity or relatedness of any alleged predicate acts.

**(b) Claim 2: Civil RICO Conspiracy (18 U.S.C. § 1962(d))**

- Testimony and evidence establishing that Plaintiffs cannot show any violations of RICO, for the reasons set forth above.
- Testimony and evidence establishing that Plaintiffs cannot show any intent, much less a conspiracy, to knowingly collect unlawful debt or otherwise violate RICO. No evidence links any Defendant to Stein's alleged January 8, 2019 promise. Naftali and Slavin had no knowledge of or involvement in the Stein-Shahinian communications.

/ / /

/ / /

**c. Claim 3: Promissory Estoppel**

- Pleadings, testimony, and evidence establishing that Plaintiffs have not pled any alleged false promises other than Stein's alleged false January 8, 2019 promise to provide a line of credit to IMS.
- Testimony and evidence establishing that Plaintiffs cannot show a promise clear and unambiguous in its terms. The LOC Email (D1022) used the word "pre-approved"—not "guaranteed"—and stated the LOC was "contingent on Advantage payoff" and "on a different platform" from EIN. The same email also described the $250,000 MCA as "pre-approved," yet that MCA plainly was not guaranteed (it still required document submission, underwriting, a funding call, and final approval by EIN). "Pre-approved" therefore cannot mean "guaranteed" for the LOC either.
- Testimony and evidence establishing that Plaintiffs cannot show they actually and reasonably relied on any alleged promises. Shahinian's same-day "Addendum Email" requested a written "addendum to protect me in case LOC does not come through . . . through no fault of my own," demonstrating that Shahinian himself understood the LOC was not guaranteed and sought written protection against its failure. When Stein refused to execute the addendum, Shahinian proceeded with the transaction anyway without any written assurance.
- The Merchant Agreement (D1028) contains an integration clause (§ 4.8) providing that "This Agreement embodies the entire agreement between Merchant and EINC and supersedes all prior agreements," and a no-oral-modification clause (§ 4.1) providing that "No modification, amendment, waiver or consent of any provision of this Agreement shall be effective unless the same shall be in writing and signed by both parties." Shahinian signed this agreement.

/ / /

- Testimony and evidence establishing that Plaintiffs cannot show that Stein or Hartford Capital, LLC ("Hartford," collectively the "Hartford Parties") were agents of Defendants. The Hartford ISO Agreement expressly prohibits Hartford from binding EIN. Stein instructed Shahinian to conceal the LOC promise from EIN on the funding call. This concealment instruction is inconsistent with authorized agency and demonstrates that Stein was acting outside any authority granted by EIN.
- Testimony and evidence establishing that no Defendant did anything to make Plaintiffs reasonably believe the Hartford Parties were agents of Defendants and acting within the scope of the purported agency.
- Testimony and evidence establishing that Plaintiffs did not reasonably believe that the Hartford Parties were agents of Defendants. Shahinian's Addendum Email (P18) and his conduct on the funding call (concealing the LOC at Stein's direction) demonstrate that Shahinian understood Stein's promise was not backed by EIN. Shahinian's IC3 FBI Complaint, filed under penalty of prosecution pursuant to 18 U.S.C. § 1001, identified the wrongdoer as "Bryan Stein" the "BROKER of this deal, who is running a fraud operation"—expressly exonerating EIN. Shahinian's DailyFunder forum posts (D1209) similarly and consistently blamed "the broker," not EIN.
- Testimony and evidence establishing that no Defendant entered a conspiracy to make any false promises or fraudulent statements to Plaintiffs.

**(c) Claims 4, 5, and 6: Fraud, Intentional Misrepresentation, Negligent Misrepresentation**

Pleadings, testimony, and evidence establishing that Plaintiffs have not pled any claims for fraud other than for Stein's alleged false January 8, 2019 promise to provide a line of credit to IMS. While the Complaint describes certain alleged conduct of Woodley in August-October 2018 and February-March 2019, Plaintiffs do not allege this conduct is directly actionable as

fraud or as RICO predicate acts. Plaintiffs allege this conduct only as a basis to hold Defendants liable via a conspiracy theory for Stein's alleged false promise. Because Plaintiffs have not pled claims for fraud based on any fraud other than Stein's alleged January 8, 2019 promise, Plaintiffs may not present any such claims at trial.

- Testimony and evidence establishing that Plaintiffs cannot show a clear false promise or misrepresentation of fact. Stein's LOC Email used conditional language ("pre-approved," not "guaranteed") and stated the LOC was "contingent on Advantage payoff" and "on a different platform" from EIN. Shahinian himself described Stein's promise as "vague and convoluted . . . he kept it vague on purpose" and acknowledged "[n]othing was clear."
- Testimony and evidence establishing that Plaintiffs cannot show they actually and reasonably relied on any alleged false promise or misrepresentation of fact. Shahinian's same-day Addendum Email (P18) proves he knew to seek written confirmation of the LOC; his proceeding without it after Stein refused the addendum vitiates any claim of reliance. The Merchant Agreement's integration clause (D1028 § 4.8) and no-oral-modification clause (D1028 § 4.1) placed Shahinian on notice that oral promises were not binding. Shahinian's 13+ prior MCA transactions totaling over $3 million (D1007–D1069) demonstrate that he was a sophisticated and experienced party who understood the distinction between oral preliminary discussions and binding written commitments.
- Testimony and evidence establishing that Shahinian's own conduct on the funding call precludes his fraud claims. Shahinian admitted that Stein called him before the funding call and instructed him to lie—and that Shahinian followed those instructions, telling EIN on the recorded call that no one had promised him anything beyond the written agreement. EIN relied on

/ / /

Shahinian's false representation in approving the transaction. Shahinian, not Defendants, is the party who concealed the LOC promise from EIN.

- Testimony and evidence establishing that Plaintiffs cannot show the Hartford Parties were agents of Defendants. (*See* evidence cited under Claim 3, above.)
- Testimony and evidence establishing that no Defendant did anything to make Plaintiffs reasonably believe the Hartford Parties were agents of Defendants.
- Testimony and evidence establishing that Plaintiffs did not reasonably believe that the Hartford Parties were agents of Defendants and acting within the scope of the purported agency.
- Testimony and evidence establishing that no Defendant entered a conspiracy to make any false promises or fraudulent statements to Plaintiffs.

**(d) Claim 7: UCL**

- Pleadings, testimony, and evidence establishing that Plaintiffs have not adequately pled their UCL claim. Because the UCL claim sounds in fraud, it is subject to Rule 9(b)'s heightened pleading requirements.
- Testimony and evidence establishing that Plaintiffs cannot show that, or how, Defendants violated a specific law and an accompanying economic injury to Plaintiffs caused by the violation. The predicate fraud and misrepresentation claims fail for the reasons set forth above.
- Testimony and evidence establishing that Plaintiffs cannot show that Defendants violated a specific law and an accompanying economic injury to Plaintiffs caused by the violation.
- Testimony and evidence establishing that Plaintiffs cannot show that Defendants engaged in a business practice that is immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers, and an accompanying economic injury to Plaintiffs.
- Testimony and evidence establishing that UCL remedies are limited to injunctive relief and restitution and do not include damages.

**(e) Damages (All Claims)**

- Testimony and evidence establishing that Plaintiffs cannot show they suffered losses proximately caused by Defendants, as contrasted with other or supervening events or causes, with respect to any of their Claims.
- Testimony and evidence establishing that the Merchant Agreement's damages waiver precludes lost profits, consequential damages, and punitive damages.
- Testimony and evidence that Defendants offered Plaintiffs a walk-away settlement during the life of the Merchant Agreement, offering to settle the remaining balance at a discount and release Plaintiffs from further obligations. Plaintiffs' rejection of this reasonable offer severs the causal chain for all post-offer damages.

## B. Defendants' Defenses

### 1. Summary of Affirmative Defenses Defendants Intend to Pursue at Trial[2]

**Affirmative Defense I: Failure to State a Claim**. Plaintiffs have failed to state a claim for collection of an unlawful debt under their RICO claims, for any unpled predicate act including bank and wire fraud, and for claims of fraud based on any alleged fraud other than Stein's alleged January 8, 2019 false promise to provide Plaintiffs with a line of credit.

**Affirmative Defense XIII: Estoppel (Judicial)**. Plaintiffs are judicially estopped from pursuing an unlawful debt RICO claim or any other claims related to the interpretation or performance of the Merchant Agreement. In previously

[2] Defendants do not intend to present affirmative defenses of Contribution, Laches, Justifiable Conduct, and Lack of Consideration. Defendants also will not specifically pursue an affirmative defense for "Good Faith," but will introduce evidence of Defendants' good faith/lack of intent to rebut any evidence Plaintiffs may seek to introduce to establish their burden to prove intent on any of Plaintiffs' claims.

successfully opposing Defendants' motion to transfer this action to the Southern District of New York, Plaintiffs unequivocally represented to the Court none of their claims related in any way to the Merchant Agreement and that none of their claims relate to the interpretation or performance of the Merchant Agreement. The Court relied on these representations in denying Defendants' motion to transfer. Having succeeded in securing their preferred forum, Plaintiffs may not now change course and assert a new "unlawful debt" RICO claim or any other claims related to the interpretation or performance of the Merchant Agreement.

Equitable Defenses: The following affirmative defenses arise from the fraudulent conduct by Plaintiffs in their dealings with Plaintiffs and others:

**Affirmative Defense XI: Unclean Hands**

**Affirmative Defense XII: Waiver**

**Affirmative Defense XIII: Estoppel (Equitable and Judicial)**

**Affirmative Defense: In Peri Delicto**[3]

**Affirmative Defense: Fraud in the Inducement**

Defenses to Plaintiffs' Negligence Claims: The following defenses eliminate or limit Plaintiffs' negligence-based claims based on Plaintiffs' conduct:

**Affirmative Defense II: Damages Resulted Solely from Plaintiffs' Fault**

**Affirmative Defense III: Contributory Negligence**

**Affirmative Defense IV: Comparative Fault**

**Affirmative Defense V: Active and Primary Fault**

**Affirmative Defense VI: Intervening Superseding Causes**

/ / /

/ / /

[3] Defendants seek leave to pursue the affirmative defenses of in peri delicto and fraud in the inducement to the extent Plaintiffs are permitted to pursue unpled claims for fraud and any RICO claims based upon collection unlawful debt, wire fraud, bank fraud, or any other unpled predicate acts.

Other Defenses:

**Affirmative Defense XIII: Statute of Limitations**. Plaintiffs failed to bring their claims within California's three-year statute of limitations for fraud claims

**Affirmative Defense IX: Offset.** Defendants are entitled to offset damages, if any, from Plaintiffs' settlement with Stein and Hartford.

**Affirmative Defense XV: Failure to Mitigate**. Plaintiffs failed to mitigate their alleged harm.

**Affirmative Defense XIII: Release**. Plaintiffs' release and settlement of claims against Stein and Hartford released Defendants from any claims arising from Stein and Hartford's actions.

**2. Elements of Affirmative Defenses**

**(a) Failure to State a Claim:**

A plaintiffs' failure to state a claim is appropriately adjudicated at trial. *See Leines v. Homeland Vinyl Prods.*, No. 2:18-cv-00969-KJM-DB, 2020 U.S. Dist. LEXIS 128681, at *51-52 (E.D. Cal. July 20, 2020) (discussing Federal Rule of Civil Procedure 12(h)(2), which provides that a defense for failure to state a claim upon which relief may be granted may be raised […] at trial). Allowing a plaintiff to present unpled legal theories at trial "would prejudice the defendant who faces different burdens and defenses under this [previously undisclosed] theory of liability." *Coleman v. Quaker Oats Co.*, 232 F.3d 1271, 1292 (9th Cir. 2000). "It is axiomatic that the issues for resolution at trial are framed by the claims and theories of liability alleged in the operative complaint." *Laporta v. Bmw of N. Am., LLC*, No. 2:17-cv-5145-KS, 2019 U.S. Dist. LEXIS 43925, at *14 (C.D. Cal. Jan. 24, 2019) (granting motion in limine excluding plaintiff from presenting "evidence or testimony at trial concerning any [claims] that are not identified in the Complaint.").

A complaint fails to state a claim where it "either (1) lacks a cognizable legal theory or (2) fails to allege sufficient facts to support a cognizable legal theory." *Somers v. Apple, Inc.*, 729 F.3d 953, 959 (9th Cir. 2013). To state a claim, the

plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007). A claim is facially plausible when the plaintiff pleads facts that "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009) (citation omitted). There must be "more than a sheer possibility that a defendant has acted unlawfully." *Id*. A plaintiff must allege facts sufficient to "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555, 570.

"Claims sounding in fraud are subject to the heightened pleading requirement established by Federal Rule of Civil Procedure 9(b), which requires that the facts constituting fraud be pled with specificity. This heightened standard requires plaintiffs to 'state the time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentation.'" *Downey Hyundai, Inc. v. Mustafa Amin*, No. 5:25-cv-00357-MRA-DTB, 2025 U.S. Dist. LEXIS 261088, at *8 (C.D. Cal. Dec. 16, 2025) (quoting *Alan Neuman Prods., Inc. v. Albright*, 862 F.2d 1388, 1393 (9th Cir. 1989). "The Ninth Circuit has held that civil RICO claims based on fraud are subject to Rule 9(b)'s particularity requirement." *Id*. (citing *Edwards v. Marin Park, Inc.*, 356 F.3d 1058, 1066 (9th Cir. 2004)).

**(b) Judicial Estoppel:**

Judicial estoppel is an equitable doctrine that "prevents a party from prevailing in one phase of a case on an argument and then relying on a contradictory argument to prevail in another phase." *New Hampshire v. Maine*, 532 U.S. 742, 749 (2001). Judicial estoppel "protect[s] the integrity of the judicial process by prohibiting parties from deliberately changing positions according to the exigencies of the moment." *Id*. at 749–50 (citation modified). The Supreme Court has identified the following non-exhaustive factors for courts to consider in determining whether judicial estoppel is applicable: (1) "a party's later position . . . [is] 'clearly inconsistent' with its earlier position," (2) the party succeeded in persuading the first

court to accept its earlier position, and (3) "the party seeking to assert an inconsistent position would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped." *Id*. at 750–51.

**(c) Unclean Hands; Waiver; Equitable Estoppel; In Peri Delicto; Fraud in the Inducement:**

The elements of the foregoing equitable affirmative defenses overlap and generally provide that plaintiffs cannot recover for claims in which their own misconduct precludes an inequitable result.

"Under California law, equitable estoppel requires that: '(1) the party to be estopped must be apprised of the facts; (2) that party must intend that his or her conduct be acted on, or must so act that the party asserting the estoppel had a right to believe it was so intended; (3) the party asserting the estoppel must be ignorant of the true state of facts; and (4) the party asserting the estoppel must reasonably rely on the conduct to his or her injury.'" *Lukovsky v. City & Cty. of S.F.*, 535 F.3d 1044, 1051-52 (9th Cir. 2008) (quoting *Honig v. San Francisco Planning Dep't*, 127 Cal. App. 4th 520, 529, 25 Cal. Rptr. 3d 649 (2005)).

In order to establish the defense of unclean hands, Defendant must establish: (1) Conduct by plaintiff that was unconscionable, bad faith, or inequitable; (2) in connection with the matter in controversy; and (3) it would be inequitable to provide plaintiff relief. *Fladeboe v. Amer. Isuzu Motors Inc*., 150 Cal.App.4th 42, 56 (Cal. Ct. App. 2007) (unclean hands is a complete defense to legal and equitable causes of action).

Waiver as an affirmative defense requires a defendant to show that a plaintiff has "intentionally relinquished or abandoned a known right." *Desert European Motorcars, Ltd. v. Desert European Motorcars, Inc.*, No. EDCV 11-197 RSWL, 2011 U.S. Dist. LEXIS 96154 (C.D. Cal. Aug. 25, 2011) (citing *United States v. Perez*, 116 F.3d 840, 845 (9th Cir. 1997)).

/ / /

To assert a defense of *in pari delicto*, Defendants must show that Plaintiffs participated in "illegal, fraudulent, or inequitable conduct." *Casey v. U.S. Bank Nat. Assn.*, 127 Cal. App. 4th 1138, 1155, n.1, (Cal. Ct. App. 2005).

Fraud in the inducement "occurs when 'the promisor knows what he is signing but his consent is induced by fraud, mutual assent is present and a contract is formed, which, by reason of the fraud, is voidable. In order to escape from its obligations the aggrieved party must rescind[.]'" *Rosenthal v. Great Western Fin. Securities Corp.*, 14 Cal.4th 394, 415 (Cal. Ct. App.1996). Invalidity of a contract may be raised as a defense. (*Ferguson v. Yaspan*, 233 Cal.App.4th 676, 682 (Cal. Ct. App. 2014). Fraudulent inducement is a subset of the tort of fraud, the elements of which are "(a) a misrepresentation (false representation, concealment, or nondisclosure); (b) scienter or knowledge of its falsity; (c) intent to induce reliance; (d) justifiable reliance; and (e) resulting damage." *Hinesley v. Oakshade Town Center*, 135 Cal.App.4th 289, 294 (Cal. Ct. App. 2005).

**(d) Damages Resulted Solely from Plaintiffs' Fault; Contributory Negligence; Comparative Fault; Active and Primary Fault**

These four affirmative defenses overlap and generally rely on elements similar to that of contributory negligence which, like negligence, can be divided into its constituent elements including: (1) an act or omission; (2) a duty to so act or refrain; (3) a breach of said duty; (4) actual causation; that is, "cause in fact;" (5) legal causation; that is, "proximate cause;" and (6) injury or damage. *Curry v. United States*, 327 F. Supp. 155, 159 (N.D. Cal. 1971).

Similarly, comparative fault generally relies on the same elements as contributory negligence, but may be interpreted as applying only to non-parties. *See LL B Sheet 1, LLC v. Loskutoff*, 362 F. Supp. 3d 804, 823 (N.D. Cal. 2019) ("To avoid duplication of the defenses, the Court interprets Defendant's eight affirmative

/ / /

defense to apply only to non-parties—that is, that Defendant's liability should be reduced due to the fault of others (*i.e.*, non-parties).")

**(e) Statute of Limitations:**

In California, fraud-based claims including Plaintiff's claims for fraud and intentional misrepresentation, are subject to a three-year statute of limitations. Cal. Code of Civil Procedure § 338(d). The statute of limitations for negligent misrepresentation is two years. Cal. Code of Civil Procedure § 339; *Ventura County Nat'l Bank v. Macker* (1996) 49 Cal.App.4th 1528, 1530-31 (where the "essence of th[e] [negligent misrepresentation] cause of action is negligence, not fraud," a two-year statute of limitations applies).

**(f) Offset:**

Offset is an equitable process, to be applied by the court at the end of the litigation. *L.A. Unified Sch. Dist. v. Torres Constr. Corp.*, 57 Cal. App. 5th 480, 500, 271 Cal. Rptr. 3d 523, 541 (2020) (citation omitted).

Where a settlement with one or more joint-tortfeasors has not been judicially determined to have been made in good faith pursuant to California Code of Civil Procedure section 877, nonsettling tortfeasors entitled to the following offset: "the amount paid in settlement is credited against any damages awarded against the nonsettling tortfeasors, and the nonsettling tortfeasors are entitled to contribution from the settling tortfeasor for amounts paid in excess of their equitable shares of liability." *Leung v. Verdugo Hills Hosp.*, 55 Cal. 4th 291, 308, 145 Cal. Rptr. 3d 553, 564, 282 P.3d 1250, 1259 (2012).

**(g) Failure to Mitigate:**

Failure to mitigate involves proof of the following elements: (1) a party has suffered damage resulting from a breach of contract or tort; (2) the party failed to take reasonable steps and exercise ordinary care to mitigate the damages; and (3) losses which could have been avoided for which there can be no recovery. *Valle De Oro Bank v. Gamboa*, 26 Cal.App.4th 1686, 1691 (Cal. Ct. App. 1994).

**(h) Release:**

A release is an affirmative defense that may foreclose a party from pursuing claims that they specifically released. *Baker v. Ferrel*, 78 Cal. App. 2d 578, 579 (1947).

**3. KEY EVIDENCE IN SUPPORT OF DEFENSES**

**(a) Failure to State a Claim**

As set forth in Defendants' MIL 1 and 2, Plaintiffs have failed to state the following claims:

*Claims 1 and 2***:** Plaintiffs assert new allegations in support of their RICO claims that differ significantly from the claims set forth in Plaintiffs' Complaint, including Plaintiffs' claims based upon "collection of unlawful debt" and the predicate acts of "wire fraud" and "bank fraud." Plaintiffs never sought leave to amend their Complaint to add these claims, let alone allege them with the particularity required of fraud-based claims under Fed. R. Civ. P. 9(b). For these reasons, Plaintiffs have failed to state a claim on the newly asserted grounds, and Plaintiffs should only be entitled to pursue the claims set forth in their Complaint. *See also.*, L.R. Appendix A ("Only claims or defenses contained in the complaint and answer and any court authorized amendment or supplement may be included in this Final Pretrial Conference Order.").

Plaintiffs' purported Claims 1 and 2, for "RICO liability for collection of unlawful debt" and for "conspiracy to collect unlawful debt," are precluded because these claims are not pled in Plaintiffs' Complaint. Plaintiffs' Complaint only alleges claims for a "pattern of racketeering activity." *See* ECF 1 at ¶ 44 ("all RICO DEFENDANTS did conduct and/or participate […] through a pattern of racketeering"); ¶51 ("Defendants did also conspire to conduct and participate in said RICO enterprise through a pattern of racketeering activity"). The Complaint fails to allege any "unlawful debt" and makes no mention of "unlawful debt," "debt," usury, or the many other facts necessary to plead an "unlawful debt" RICO claim. The

deadline to hear motions to amend pleadings expired on February 12, 2024 (ECF 72), and the Court denied Plaintiffs' untimely October 2025 motion for leave to amend.

Additionally, on May 16, 2025, Plaintiffs informed Defendants for the first time that they intend to assert RICO claims based on purported predicate acts not alleged in the Complaint, including purported predicate acts of "wire fraud" and "bank fraud" allegedly committed against persons other than Plaintiffs. These alleged predicate acts are not pled in Plaintiffs' Complaint, and certainly not with the particularity required under Fed. R. Civ. P. 9(b), and thus may not be submitted at trial.

Plaintiffs' Complaint also does not allege, and certainly not with the particularity required by Rule 9(b), claims for fraud based on any fraud other than Stein's alleged January 8, 2019 false promise to provide a line of credit to IMS. While the Complaint vaguely and generally describes certain alleged conduct of Woodley in August–October 2018 and February–March 2019, Plaintiffs do not allege that this conduct is directly actionable as fraud or as RICO predicate acts. Because Plaintiffs have not pled claims for fraud based on any fraud other than Stein's alleged January 8, 2019 false promise, Plaintiffs may not present any such claims at trial.

*Claims 3 and 4*: Similarly, Plaintiffs' Complaint does not allege, with the particularity required by Rule 9(b), any claims for fraud based on any fraud other than Stein's alleged January 8, 2019 false promise to provide a line of credit to IMS. Plaintiffs have therefore failed to state a claim for fraud and intentional misrepresentation based on any alleged fraud other than that single alleged promise.

**(b) Judicial Estoppel**

Plaintiffs are judicially estopped from pursuing an unlawful debt RICO claim or any other claims related to the interpretation or performance of the Merchant Agreement. In successfully opposing Defendants' November 2023 motion to

transfer this action to the Southern District of New York, Plaintiffs unequivocally represented to the Court that none of their claims are "related in any way to the Merchant Agreement," that their claims are "centered around [a] $750,000 loan promised separate and distinct from [the] Merchant Agreement," and that there is "no nexus between [their] claims and [the] Merchant Agreement." The Court relied on these representations in denying Defendants' motion to transfer.

Having succeeded in securing their preferred forum, Plaintiffs may not now change course and assert a new "unlawful debt" RICO claim premised directly on the terms of the Merchant Agreement. All three judicial estoppel factors identified by the Supreme Court are satisfied: (1) Plaintiffs' current position—that the Merchant Agreement is a usurious loan subject to RICO's "unlawful debt" provisions—is "clearly inconsistent" with their prior position that none of their claims relate to the Merchant Agreement; (2) the Court accepted Plaintiffs' earlier position in denying transfer; and (3) Plaintiffs would derive an unfair advantage by securing their preferred forum based on one theory and then pursuing an entirely different theory at trial.

**(c) Unclean Hands; Waiver; Equitable Estoppel; In Pari Delicto; Fraud in the Inducement**

Defendants intend to produce at least testimony and evidence showing Plaintiffs fraudulently induced Defendants to enter into the Merchant Agreement. Shahinian admitted in his deposition that Stein called him before the funding call and instructed him to lie to EIN. Shahinian followed Stein's instructions and knowingly lied to EIN on the recorded funding call, representing that no one had promised him anything beyond the written Merchant Agreement. This representation was false, and Shahinian knew it was false at the time. EIN relied on Shahinian's false representation in approving and funding the transaction.

Defendants further intend to introduce evidence showing that Plaintiffs' fraud against Defendants was consistent with, and part of, a broader pattern of fraudulent

conduct. Plaintiffs entered into at least 15 MCA agreements from various funders in the 18 months surrounding the EIN transaction (D1007–D1069), and evidence shows that Plaintiffs leveraged and exploited their relationship with Defendants, the fraud Plaintiffs committed, and the pendency of this lawsuit, as tools to defraud other MCA companies, lenders, and other persons and entities.

**(d) Damages Resulted Solely from Plaintiffs' Fault / Contributory Negligence / Comparative Fault / Active and Primary Fault**

Defendants intend to produce at least testimony and evidence showing that, to the extent Plaintiffs can establish any of the elements of their claim of negligent misrepresentation, Plaintiffs contributed to such negligence by expressly misrepresenting to Defendants that Plaintiffs did not receive and were not relying on any consideration or promises, including from any brokers or sales organizations, other than those expressly memorialized in the parties' Merchant Agreement (D1028). Shahinian admits this misrepresentation was intentional. Plaintiffs' own misrepresentations and omissions are the proximate cause of Plaintiffs' alleged injuries. Further, Plaintiffs' extensive MCA experience and financial sophistication demonstrate that Plaintiffs understood the implications of relying on unwritten promises and assumed that risk.

**(e) Statute of Limitations**

Defendants intend to produce at least testimony and evidence showing that the parties entered into the Merchant Agreement on January 8, 2019. The gravamen of Plaintiffs' Complaint is that they were promised a loan 30 days after entering the MCA Agreement, which they did not receive. Therefore, under Plaintiffs' own theory of the case, Plaintiffs knew or should have known of facts giving rise to their lawsuit no later than February 7, 2019—when the promised LOC failed to materialize. Plaintiffs' negligent misrepresentation claim, subject to a two-year statute of limitations (Cal. Code Civ. Proc. § 339), expired on February 7, 2021.

Plaintiffs' fraud-based claims, subject to a three-year statute of limitations (Cal. Code Civ. Proc. § 338(d)), expired on February 7, 2022. Plaintiffs did not file their Complaint in the California Superior Court until March 4, 2022, after the relevant statutes of limitations had expired.

**(f) Offset**

Defendants intend to produce at least testimony and evidence showing Plaintiffs settled their claims against former defendants Hartford Capital LLC and Stein (collectively, the "Settling Defendants") in consideration for a settlement payment of $110,000. Plaintiffs' damages, if any, must be offset by the money they received and benefited from, including without limitation the $110,000 settlement payment by the Settling Defendants.

**(g) Failure to Mitigate**

Defendants intend to produce at least testimony and evidence showing that, at all times, Plaintiffs never tried to mitigate their alleged damages and instead continued to take out new MCA agreements as part of an intentional scheme to defraud other MCA companies. Defendants extended a walk-away offer to Plaintiffs during the life of the Merchant Agreement, offering to settle the remaining balance at a discount and release Plaintiffs from further obligations. Plaintiffs' rejection of this offer was not the act of a defrauded merchant—it was a deliberate decision driven by co-conspirators who valued the ongoing EIN obligation as an operational asset for their ongoing scheme. To the extent any of Plaintiffs' damages can be attributed to Defendants, such damages are precluded by Plaintiffs' own failure to mitigate, and the walk-away offer independently severs the causal chain for all post-offer damages.

**(h) Release**

Defendants intend to produce at least testimony and evidence showing Plaintiffs' release of Stein and Hartford effectively released Defendants from all claims Plaintiffs attribute to Stein's and Hartford's conduct. Because all of Plaintiffs'

claims against Defendants are derivative of Stein's alleged conduct—premised on theories of agency and conspiracy—Plaintiffs' release of Stein independently bars their agency-based and conspiracy-based claims against Defendants.

## ANTICIPATED EVIDENTIARY ISSUES

Defendants anticipate evidentiary issues that are set forth more fully in Defendants' five Motions in Limine ("MILs"), identified in the Proposed Pretrial Conference Order and to be filed by March 4, 2026:

- **MIL No. 1**: To preclude evidence and argument in support of Plaintiffs' unpled § 1961(6) "collection of an unlawful debt" claims. Plaintiffs' Complaint alleges only a § 1961(5) "pattern of racketeering activity" and does not state a § 1961(6) Unlawful Debt Claim. The Court denied Plaintiffs' untimely motion for leave to amend on October 9, 2025, for failure to satisfy Rule 16(b)'s "good cause" standard (ECF No. 145 at 4–6). Accordingly, evidence and argument that the Merchant Agreement constitutes a usurious loan or an "unlawful debt" should be excluded.
- **MIL No. 2**: To preclude evidence or argument on any claims related to the interpretation or performance of the Merchant Agreement. In successfully opposing Defendants' motion to transfer this action to the Southern District of New York, Plaintiffs represented to the Court that their "claims . . . do not arise from [a] breach of the Merchant Agreement or any terms contemplated by the Merchant Agreement," that there is no "nexus between the claims in Plaintiffs' detailed Complaint and the Merchant Agreement," and that the Merchant Agreement "is not part of any of the claims in the Complaint." (ECF No. 78.) The Court relied on these representations in denying transfer. (ECF No. 87 at 5–6.) Judicial estoppel prevents Plaintiffs from now changing positions and asserting claims related to the interpretation or performance of the Merchant Agreement.

/ / /

- **MIL No. 3**: To bifurcate trial on the question of whether Plaintiffs are judicially estopped from pursuing any § 1961(6) "collection of an unlawful debt" claims or any other claims related to the interpretation or performance of the Merchant Agreement. Judicial estoppel is  dispositive issue that can be resolved as a matter of law based on prior filings and the Court's prior orders, without delving into the complex factual merits of the Unlawful Debt Claims.
- **MIL No. 4**: To preclude evidence and argument in support of any RICO "pattern of racketeering activity" claims or liability premised on any alleged racketeering activity predicate acts not alleged in the Complaint but impermissibly asserted as independent predicate acts in Plaintiffs' pretrial documents. These unpled predicate acts include, among others: (i) alleged fraud against Wells Fargo; (ii) alleged fraud "against the U.S. Government" in connection with a PPP loan; (iii) alleged PPP fraud by non-party Fast Capital; (iv) alleged fraud in 700+ lawsuits; (v) alleged fraud relating to a purported "Ponzi scheme"; and (vi) alleged fraud against hundreds of merchants not identified in the Complaint or in discovery. None of these predicate acts are pled with the particularity required by Rule 9(b).
- **MIL No. 5**: To preclude evidence and argument on any claims premised upon any alleged fraud committed directly by Defendants Woodley, EIN, Naftali, or Slavin. Plaintiffs' Complaint does not allege, with the specificity required by Rule 9(b), any claims for fraud based on any alleged misrepresentations other than those made by non-party Stein to Plaintiffs. To the extent the Complaint describes certain alleged conduct of Defendant Woodley in August-October 2018 and February-March 2019, it does not plead Woodley's representations as separately actionable fraud or RICO predicate acts—much less with the particularity required by Rule 9(b)—but instead describes them only as part of the narrative underlying Plaintiffs' conspiracy theory for holding Defendants liable for Stein's alleged fraud.

**ISSUES OF LAW**

- Whether Plaintiff Shahinian has standing to pursue any claims in this action, given that he is the sole shareholder of IMS and cannot pursue separate standing for IMS's claims.
- Whether Plaintiffs are permitted to pursue a claim under 18 U.S.C. § 1962(c) for an alleged "collection of an unlawful debt" despite not pleading that claim in their Complaint, and in light of the Court's October 9, 2025 order denying leave to amend.
- Whether Plaintiffs are judicially estopped from asserting a claim under Section 1962(c) for an alleged "collection of an unlawful debt," based on their prior representations to the Court that none of their claims relate to the Merchant Agreement.
- Whether Plaintiffs may assert RICO claims based on predicate acts such as bank and wire fraud not alleged in the Complaint, in light of Fed. R. Civ. P. 9(b)'s heightened pleading requirements for fraud-based claims.
- Whether California's three-year statute of limitations for fraud-based claims (Cal. Code Civ. Proc. § 338(d)) bars Plaintiffs' fraud and intentional misrepresentation claims, given that the claims accrued no later than February 7, 2019, and suit was not filed until March 4, 2022.
- Whether California's two-year statute of limitations for negligent misrepresentation claims (Cal. Code Civ. Proc. § 339; Ventura County Nat'l Bank v. Macker, 49 Cal. App. 4th 1528, 1530-31 (1996)) bars Plaintiffs' negligent misrepresentation claim.
- Whether the Merchant Agreement's integration clause (D1028 § 4.8) and no-oral-modification clause (D1028 § 4.1) bar Plaintiffs from relying on alleged oral promises contradicting the written agreement, and the applicability of the parol evidence rule to Plaintiffs' fraud and misrepresentation claims.

/ / /

- Whether the alleged misrepresentations upon which Plaintiffs' claims are based were sufficiently specific and objectively false so as to be actionable under Fed. R. Civ. P. 9(b), including whether the LOC Email's (D1022) use of "pre-approved" rather than "guaranteed" and the multiple contingencies stated therein render the alleged promise non-actionable.
- Whether Plaintiffs have proven the elements for fraud and intentional misrepresentation against Defendants based on allegations arising from the actions of former defendants Hartford and Stein, including (a) whether Hartford and Stein made any material misrepresentations of fact to Plaintiffs, (b) whether Plaintiffs actually relied on those alleged misrepresentations of fact, (c) whether 'Plaintiffs' alleged reliance was reasonable in light of the Merchant Agreement's integration clause, Plaintiffs' financial sophistication, and Shahinian's own Addendum Email, and (d) whether Shahinian's own fraud on the funding call precludes his claims.
- Whether former defendants Hartford and Stein were agents of defendants EIN, Woodley, and/or Naftali, and if so, what was the scope of such agency. Whether the Hartford ISO Agreement's (P171 § 6) prohibition on Hartford binding EIN negates any actual authority. Whether Stein's instruction to Shahinian to conceal the LOC promise from EIN negates any ostensible authority.
- Whether Defendants were co-conspirators of Hartford's and Stein's alleged fraud, and whether the evidence supports a finding that any Defendant agreed—expressly or tacitly—to participate in a common unlawful plan.
- Whether Plaintiffs have released Defendants from any conduct by Hartford and Stein, and whether the release of the agent (Stein) extinguishes vicarious liability against the alleged principal (EIN and individual Defendants) as a matter of law.

/ / /

- Whether Plaintiffs have proven the elements for promissory estoppel, including (a) whether any promise was "clear and unambiguous" in light of the conditional language in the LOC Email and the Merchant Agreement's integration clause, and (b) whether any reliance was reasonable given Shahinian's Addendum Email and extensive MCA experience.
- Whether Plaintiffs have proven the elements for negligent misrepresentation, including whether Defendants owed any duty of care in a commercial MCA transaction and whether reliance was reasonable.
- If Plaintiffs can pursue their unlawful debt theory, what law governs the Court's interpretation of the Merchant Agreement for the purpose of determining whether it constitutes a usurious loan, and whether the California Corporations Code § 25118(b) usury exception applies.
- Under California and New York law, whether Plaintiffs have proved that each Defendant has violated the usury statute, including whether each Defendant had the necessary intent, and whether any of the exceptions for usury apply.
- Whether Plaintiffs have established each element of a RICO claim, including whether each Defendant engaged in conduct that meets the elements for 18 U.S.C. § 1962(c), and specifically whether Plaintiffs have shown (a) an enterprise, (b) a pattern of racketeering activity with continuity and relatedness, (c) each Defendant's participation in the conduct of the enterprise's affairs, and (d) proximate causation of injury.
- If Plaintiffs have proved a claim under 18 U.S.C. § 1962(c), whether each Defendant participated in a conspiracy in furtherance of the alleged conduct for the purposes of 18 U.S.C. § 1962(d).
- Whether Defendants can be said to have violated California's UCL, and whether the UCL claim fails because the predicate fraud claims fail.
- Whether Defendants have proven their affirmative defenses based on equitable estoppel, unclean hands, waiver, in pari delicto, or fraudulent

inducement, based on Plaintiffs' unconscionable, bad faith, and inequitable conduct—including Shahinian's admitted lie on the recorded funding call.

- Whether Defendants have proven their affirmative defenses based upon damages resulting solely from Plaintiffs fault, contributory negligence, comparative fault, active and primary fault, and intervening superseding causes.
- If liability is established for any of Plaintiffs' claims, what damages are Plaintiffs entitled to and what damages, if any, have Plaintiffs proven were proximately caused by Defendants, including (a) the effect of the Merchant Agreement's damages waiver, (b) whether damages are limited to the difference between funds IMS received and funds paid to EIN, (c) the availability of punitive damages under Cal. Civ. Code § 3294, and (d) whether Plaintiffs' damages are precluded or limited by their failure to accept Defendants' walk-away offer.
- Whether, and in what amounts, Plaintiffs have failed to mitigate their alleged damages.
- Whether, and in what amount, Defendants are entitled to a setoff of any damages based on the Plaintiffs' settlement with former Defendants Hartford and Stein.
- Whether, and in what amount, any parties are entitled to attorneys' fees or costs.

## ATTORNEYS' FEES

The Merchant Agreement provides as follows:" "Merchant shall pay to EINC all reasonable costs associated with (a) a breach by Merchant of the representations, warranties and covenants in this Agreement and the enforcement thereof, and (b) the enforcement of EINC's remedies set forth in this Agreement, including but not limited to court costs and attorneys' fees"." D1024 § 3.3.

/ / /

Plaintiffs made multiple misrepresentations and omissions when entering into the Merchant Agreement with Defendants. Shahinian admitted in his deposition (P6, pp. 26-28) that he knowingly lied to EIN on the recorded funding call, falsely representing that no one had promised him anything beyond the written agreement. This misrepresentation constitutes a breach of the representations and warranties in the Merchant Agreement, which required that all information provided by the Merchant—including during recorded interviews—be "true, accurate, and complete" (D1028). The Merchant Agreement further provides that "[a]ny misrepresentation made by Merchant or Guarantor in connection with this Agreement may constitute a separate cause of action for fraud or intentional misrepresentation" (D1028).

Similarly, this action is based in substantial part on Defendants' efforts to enforce the terms of the Merchant Agreement. As such, Defendants are entitled to their attorneys' fees and costs under the Merchant Agreement.

**ABANDONMENT OF ISSUES**

Plaintiffs have appeared to abandon their RICO claims to the extent they rely upon the original "pattern of racketeering activities" set forth in their Complaint.

Other than the affirmative defenses that Defendants will not be pursuing, Defendants have not abandoned any issues.

DATED: March 2, 2026

SOLOMON WARD SEIDENWURM & SMITH, LLP

By: */s/ Levi Y. Silver*
LEVI Y. SILVER
OWEN M. PRASKIEVICZ
Attorneys for Ein Cap, Inc.

DATED: March 2, 2026

PARK & LIM

By: */s/ Jessie Y. Kim*
S. YOUNG LIM
JESSIE Y. KIM
Attorneys for Defendantes EIN Cap, Inc., Kevin Woodley, Russell Naftali and Gene Slavin